ACCEPTED
03-15-00427-CV
8232163
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/14/2015 5:15:01 PM
JEFFREY D. KYLE
CLERK

No. 03-15-00427-CV

_____

In the Court of Appeals
for the Third Judicial District
Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/14/2015 5:15:01 PM
JEFFREY D. KYLE
Clerk

_____

GLENN HEGAR, COMPTROLLER OF PUBLIC ACCOUNTS
OF THE STATE OF TEXAS, AND
KEN PAXTON, ATTORNEY GENERAL OF THE STATE OF TEXAS,
*Appellants*,

v.

AUTOHAUS LP, LLP,
*Appellee*.

_____

On Appeal from the 419th Judicial District Court
Travis County, Texas

_____

**APPELLANTS' BRIEF**

_____

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil
Litigation

ROBERT O'KEEFE
Division Chief
Taxation Division

CYNTHIA A. MORALES
Assistant Attorney General
State Bar No. 14417420
Financial Litigation and Charitable Trusts
Division

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548
Austin, Texas 78711-2548
Telephone: (512) 475-4470
Telecopier: (512) 477-2348
cynthia.morales@texasattorneygeneral.gov

***Counsel for Appellants***

**ORAL ARGUMENT REQUESTED**

# IDENTITY OF THE PARTIES AND COUNSEL

*Appellants*:

Glenn Hegar
Comptroller of Public Accounts of the State of Texas

Ken Paxton
Attorney General of the State of Texas


*Counsel for Appellants at trial and on appeal:*

Cynthia Morales
State Bar No. 14417420
Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
Financial Litigation and Charitable Trusts Division
P.O. Box 12548 (MC 17)
Austin, Texas 78711-2548
Tel: (512) 475-4470
Fax: (512) 477-2348
cynthia.morales@texasattorneygeneral.gov

*Appellee:*

Autohaus LP, LLP


*Counsel for Appellee at trial and on appeal:*

David Colmenero
State Bar No. 18347650

Alex Pilawski
State Bar No. 24074899

MEADOWS, COLLIER, REED, COUSINS, CROUCH & UNGERMAN, L.L.P.
901 Main Street, Ste. 3700
Dallas, TX 75202
Tel: 214-744-3700
Fax: 214-747-3732
dcolmenero@meadowscollier.com
apilawski@meadowscollier.com

*Former additional counsel for Appellee at trial*:

Jason B. Freeman
State Bar No. 24069736
MEADOWS, COLLIER, REED, COUSINS, CROUCH & UNGERMAN, L.L.P.

Thomas L. Fahring
State Bar No. 24074194
P.O. Box 43
Anahuac, Texas 77514

i

# TABLE OF CONTENTS

Identity of the Parties and Counsel ............................................................. i

Table of Contents ....................................................................................... ii

Index of Authorities ................................................................................... v

Statement of the Case ................................................................................ x

Issues Presented ........................................................................................ xi

Statement of Facts ..................................................................................... 2

I.     Statutory and Regulatory Background ............................................ 2

      A.     Texas Tax Code Section 171.1012 ......................................... 3

      B.     Comptroller Rule 3.588 .......................................................... 4

II.    Autohaus's Tax Report and Suit .................................................... 7

      A.     Autohaus's 2009 Franchise Tax Report and the Comptroller's Audit ................................................................ 7

      B.     Autohaus's Protest Letter and Protest Payment ..................... 8

      C.     Autohaus's suit ....................................................................... 10

Summary of Argument ............................................................................... 14

Argument .................................................................................................... 15

I.     Autohaus's Installation of Automotive Parts onto or into Customer-Owned Automobiles During Repair or Maintenance Work Is Not the "Production" of Those Parts Under Section 171.1012, and Therefore the Labor Costs for Such Installation May Not Be Deducted as Costs of Goods Sold. ................................................................................ 15

II.     Comptroller Rule 3.588(b)(7) Is Both Valid and Constitutional. ..................15

    A.     Costs of goods sold under section 171.1012 include the cost of acquiring or producing goods for sale, but excludes the cost of providing services..........................................................................16

    B.     Section 171.1012 is ambiguous in regard to transactions involving both services and sales and in its use of the word "installation" because the labor involved in installation can take place either in the context of the production of a good for sale (deductible) or in the context of services performed for another (not deductible). Rule 3.588 addresses this ambiguity. .......................17

    C.     Autohaus does not "produce" purchased automotive parts when it installs them onto or into customer-owned automobiles, but rather it engages in a mixed transaction involving a sale of the part and the provision of an automotive repair or maintenance service. Autohaus may deduct as costs of goods sold its cost of acquiring the automotive parts, but may not deduct labor costs for "producing" the parts by installing them onto or into customer-owned automobiles..............................................................20

    D.     Autohaus's claim also fails under the application of Rule 3.588(b)(7), and the Rule is both valid and constitutional..................25

III.    Even If a Taxable Entity May Deduct Labor Costs for Installing Automotive Parts onto or into Customer-Owned Automobiles During Repairs as Costs of Goods Sold, Material Issues of Fact Preclude the Granting of Summary Judgment and the Award of a Specific Refund Amount on Autohaus's Chapter 112 Claim. ................................37

IV.    The Trial Court Had No Jurisdiction to Consider Autohaus's Attempted Challenge Under the Uniform Declaratory Judgment Act to Comptroller Rule 3.588(b)(7) or Its Request for Attorneys' Fees and Court Costs Because Autohaus's Claim Did Not Fall Within the Scope of the UDJA and Was, Apart From The Attorneys' Fees and Court Costs Request, Redundant of Its Chapter 112 Claim..........................41

A. A trial court may not grant a declaratory judgment regarding the validity and constitutionality of a rule under the UDJA, and therefore the trial court had no jurisdiction to grant a declaratory judgment nor attorney's fees or court costs under the UDJA in this case. .................................................................42

B. Autohaus did not raise a claim within the *ultra vires* exception.........47

C. While Texas Government Code section 2001.038 provides courts with jurisdiction to grant declaratory judgments regarding the validity of a rule, such provision does not provide for the award of attorneys' fees or court costs. Thus even if Autohaus had raised such a claim, and the trial court had jurisdiction under section 2001.038 to grant a declaratory judgment on Rule 3.588(b)(7), it had no jurisdiction to award attorneys' fees or court costs.................................................48

D. Autohaus may not recover attorneys' fees or court costs for redundant claims that fall under the exclusive jurisdiction of Chapter 112. .................................................................................49

E. Conclusion.................................................................................52

Prayer .................................................................................................................53

Certificate of Compliance ...................................................................................54

Certificate of Service ..........................................................................................55

Appendix

# INDEX OF AUTHORITIES

**Cases**

*BFI Waste Systems of N. America, Inc. v. Martinez Envtl. Grp.*,
  93 S.W.3d 570 (Tex. App.—Austin 2002, pet. denied) ................................26

*City of El Paso v. Heinrich*,
  284 S.W.3d 366 (Tex. 2009) ............................................................44, 46, 47

*City of McKinney v. Hank's Rest. Grp., L.P.*,
  412 S.W.3d 102 (Tex. App.—Dallas 2013, no pet.) ..............................45, 46

*City of San Antonio v. Shavano Ranch*,
  No. 04-13-00623-CV, 2014 WL 631484 (Tex. App.—San Antonio
  Feb. 19, 2014, pet. denied) (mem. op.)...........................................................49

*Combs v. Chapel Zenray, Inc.*,
  357 S.W.3d 751 (Tex. App.—Austin  2011, pet. denied) .............................30

*Combs v. STP Nuclear Operating Co.*,
  239 S.W.3d 264 (Tex. App.—Austin 2007, pet. denied) ..............................33

*El Paso Natural Gas Co. v. Strayhorn*,
  208 S.W.3d 676 (Tex. App.—Texarkana 2006, no pet.) ..............................40

*Hilco Elec. Coop. v. Midlothian Butane Gas Co., Inc.*,
  111 S.W.3d 75 (Tex. 2003) ....................................................................22, 30

*In re Nestle USA, Inc.*,
  359 S.W.3d 207 (Tex. 2012) ..................................................................51, 52

*In re Nestle USA, Inc.*,
  387 S.W.3d 610 (Tex. 2012) .........................................................................33

*Jackson v. State Office of Admin. Hearings*,
  351 S.W.3d 290 (Tex. 2011) ..................................................................50, 51

*John G. and Marie Stella Kenedy Mem'l Found. v. Dewhurst*,
  90 S.W.3d 268 (Tex. 2002) ...........................................................................49

*Kirby Lake Develop., Ltd. v. Clear Lake City Water Auth.*,
    320 S.W.3d 829 (Tex. 2010) ..................................................................29

*MBM Fin. Corp. v. Woodlands Operating Co., L.P.*,
    292 S.W.3d 660 (Tex. 2009) ......................................................... 50, 51, 52

*Myers v. State*,
    169 S.W.3d 731 (Tex. App.—Austin 2005, no pet.)............................. 27, 28

*Nixon v. Mr. Prop. Mgmt. Co., Inc.*,
    690 S.W.2d 546 (Tex. 1985) ...............................................................37, 40

*Patel v. Texas Dep't of Licensing & Regulation*,
    469 S.W.3d 69 (Tex. 2015) ..................................................................48

*R.R. Comm'n of Tex. v. Texas Citizens for a Safe Future & Clean Water*,
    336 S.W.3d 619 (Tex. 2011) ..............................................................27, 32

*Sanadco, Inc. v. Office of Comptroller*,
    No. 03-11-00462-CV, 2015 WL   1478200 (Tex. App.—Austin
    March 25, 2015, pet. denied, motion for reh'g of pet.
    filed November 12, 2015) ................................................................50, 51, 52

*Stiles v. Resolution Trust Co.*,
    867 S.W.2d 24 (Tex. 1993) ...................................................................33

*Strayhorn v. Raytheon E-Sys., Inc.*,
    101 S.W.3d 558 (Tex. App.—Austin 2003, pet. denied)............................51

*Texas Dep't of Trans. v. Sefzik*,
    355 S.W.3d 618 (Tex. 2011) ...............................................................44, 46

*Texas Entm't Ass'n, Inc. v. Combs*,
    431 S.W.3d 790 (Tex. App.—Austin 2014, pet. denied) , cert. denied
    sub nom, *Texas Entm't Ass'n Inc. v. Hegar*, 135 S.Ct. 1568 (2015) ............33

*Texas State Bd. of Vet. Med. Examiners v. Giggleman*,
    408 S.W.3d 696 (Tex. App.—Austin 2013, no pet.)..............................passim

*TGS-NOPEC Geophysical Co. v. Combs*,
    340 S.W.3d 432 (Tex. 2011) ...........................................................22, 28, 30

*Upjohn Co. v. Rylander*,
    38 S.W.3d 600 (Tex. App.—Austin 2000, pet. denied) .........................32, 33

*Zimmer US, Inc. v. Combs*,
    368 S.W.3d 579 (Tex. App.—Austin 2012, no pet.) .........................18, 21, 26

**Constitutional Provisions**

Tex. Const. art. I, § 3 ............................................................................... 32

Tex. Const. art. VIII, § 1(a) ......................................................................32

U.S. Const. amend. XIV, § 1 .....................................................................32

**Statutes**

TEX. CIV. PRAC. & REM. CODE § 37.004 ........................................ 42, 43, 44, 46

TEX. CIV. PRAC. & REM. CODE § 37.006 .............................................. 43, 44, 46

TEX. CIV. PRAC. & REM. CODE § 37.009 ...........................................................46

TEX. CIV. PRAC. & REM. CODE § 37.001 ............................................................x

TEX. GOV'T CODE § 2001.038 ................................................................... passim

TEX. TAX CODE § 111.002 ....................................................................18

TEX. TAX CODE § 111.104 ....................................................................39

TEX. TAX CODE § 112.051 ....................................................................8

TEX. TAX CODE § 112.052 .................................................................... ix, 9

TEX. TAX CODE § 112.053 ...................................................................9, 50

TEX. TAX CODE § 112.060 ......................................................................... 39

TEX. TAX CODE § 112.108 ...........................................................................51

TEX. TAX CODE § 171.001 ............................................................................2

TEX. TAX CODE § 171.002 ............................................................................3

TEX. TAX CODE § 171.101 ............................................................................3

TEX. TAX CODE § 171.106 ............................................................................3

TEX. TAX CODE § 171.1012 ............................................................... *passim*

TEX. TAX CODE § 171.1016 ..........................................................................2

## Rules

TEX. R. CIV. P. 166a(c) ...............................................................................37

## Regulations

34 TEX. ADMIN. CODE § 3.588 ................................................... *passim*

## Other Authorities

32 Tex. Reg. 6788 (2007) .............................................................................4

32 Tex. Reg. 10034 (2007) ............................................................ 4, 5, 6, 29

38 Tex. Reg. 3415 (2013) ..............................................................................5

**Legislative Enactments**

Act of May 2, 2006, 79th Leg., 3rd C.S.,
ch. 1, § 5, 2006 Tex. Gen. Laws 1, 8 ........................................................ 3, 4, 29

**Comptroller's Decisions**

Comptroller Decision 108, 124, STAR Accession No. 201309781H,
September 12, 2013 ....................................................................................28

Comptroller Decision 108, 125, STAR Accession No. 201309781H,
September 12, 2013 ....................................................................................28

Comptroller Decision 108, 126, STAR Accession No. 201309781H,
September 12, 2013 ....................................................................................28

# STATEMENT OF THE CASE

*Nature of the case:* This is a tax protest suit brought under section 112.052 of the Tax Code and a suit for declaratory judgment.

*Trial Court:* 419th Judicial District Court, Travis County
The Honorable Darlene Byrne, presiding

*Course of Proceedings:* Appellee Autohaus LP, LLP ("Autohaus") filed this lawsuit against the Texas Comptroller ("Comptroller") and Texas Attorney General (collectively "Appellants"), on March 22, 2013. CR4. Autohaus filed a motion for summary judgment and Appellants filed a response, cross-motion for summary judgment, and plea to the jurisdiction. CR32–84, 93–177. On July 22, 2014, the trial court issued an order granting Autohaus's motion for summary judgment and denying Appellants' motion for summary judgment and plea to the jurisdiction. CR196–98. After a bench trial on the amount of attorneys' fees and court costs to be awarded, the trial court signed a final judgment on April 29, 2015. CR344–49. A motion for new trial was filed on May 29, 2015, and was denied on July 9, 2015. CR350–64, 383. Notice of appeal was filed on July 10, 2015. CR384–85.

*Trial Court's Disposition:* On April 29, 2015, the trial court entered a final judgment in favor of Autohaus, and ordered Appellants to issue a refund of $14,227.09 of Texas franchise tax, plus statutory interest. CR344–49. The trial court also declared that Comptroller Rule 3.588(b)(7), as it applies to the term "production," is invalid and unconstitutional, and awarded attorneys' fees and court costs to Autohaus. CR346–48.

# ISSUES PRESENTED

Section 171.1012 of the Tax Code permits a taxable entity to deduct as costs of goods sold its direct costs of acquiring or producing goods that it sells to customers. Taxable entities may deduct labor costs for producing goods for sale, including installation labor. Comptroller Rule 3.588(b)(7) implements section 171.1012 and clarifies that installation is production only if the installation occurs during the manufacturing or construction process.

This appeal decides whether a taxable entity that purchases goods for sale may, in addition to deducting its costs of acquiring such goods for sale, also deduct labor costs for "producing" those same goods if it installs those goods onto or into personal property belonging to a customer. The appeal also involves an attempted challenge to Comptroller Rule 3.588(b)(7) under the Uniform Declaratory Judgment Act (TEX. CIV. PRAC. & REM. CODE §§ 37.001, *et. seq.*)("UDJA"), and the award of attorneys' fees thereunder. The specific issues in this appeal are:

1. Autohaus's installation of automotive parts onto or into customer-owned automobiles during repair or maintenance work is not the "production" of those parts under section 171.1012, and therefore the labor costs for such installation may not be deducted as costs of goods sold.

2. Comptroller Rule 3.588(b)(7) is both valid and constitutional.

3. Even if a taxable entity may deduct labor costs for installing automotive parts onto or into customer-owned automobiles during repairs as costs of goods sold, material issues of fact preclude the

granting of summary judgment and the award of a specific refund amount on Autohaus's Chapter 112 claim.

4. The trial court had no jurisdiction to consider Autohaus's attempted challenge under the Uniform Declaratory Judgment Act to Comptroller Rule 3.588(b)(7) or its request for attorneys' fees and court costs because Autohaus's claim did not fall within the scope of the UDJA and was, apart from the attorneys' fees and court costs request, redundant of its Chapter 112 claim.

No. 03-15-00427-CV

_____

# In the Court of Appeals
## for the Third Judicial District
## Austin, Texas

_____

GLENN HEGAR, COMPTROLLER OF PUBLIC ACCOUNTS
OF THE STATE OF TEXAS, AND
KEN PAXTON, ATTORNEY GENERAL OF THE STATE OF TEXAS,
*Appellants,*

v.

AUTOHAUS LP, LLP,
*Appellees.*

_____

On Appeal from the 419th Judicial District Court, Travis County, Texas

_____

## APPELLANTS' BRIEF

_____

TO THE HONORABLE JUSTICES OF THE THIRD COURT OF APPEALS:

Autohaus seeks to deduct, as costs of goods sold, its labor costs for "producing" purchased automotive parts when it installs those parts onto or into a customer's automobile during repairs or maintenance. Autohaus's claim fails because its installation of an automotive part onto or into a customer's automobile is not the "production" of that part and is not a cost of Autohaus "acquiring or producing" that part for sale. Autohaus's challenge to Comptroller Rule 3.588(b)(7) likewise fails because the rule properly and constitutionally

1

implements the Legislature's intent that services not be deductible as costs of goods sold and that a business may only deduct installation labor as costs of producing a good for sale when materials are installed onto or into personal property that the business owns and is actually producing for sale.

Autohaus's attempted declaratory judgment claim under the UDJA fails because it does not fall within the scope of the UDJA and, apart from an improper request for attorneys' fees and court costs, it requests relief redundant of the issues in its Chapter 112 claim.

The judgment of the trial court should be reversed, the declaratory judgment portion dismissed for want of jurisdiction, and judgment rendered in favor of Appellants or, alternatively, the case remanded for a new trial.

## STATEMENT OF FACTS

### I. STATUTORY AND REGULATORY BACKGROUND

The franchise tax imposes a tax on business entities in Texas for the privilege of doing business in Texas. TEX. TAX CODE § 171.001(a). At the time at issue in this appeal, for business entities with more than $10,000,000 in total revenue[1] like Autohaus, the determination of the amount of franchise tax due first

---

[1] Businesses with less than $10,000,000 in revenue also had, and continue to have, the option of using total revenue instead of margin as their tax base, but that provision is not relevant to this appeal. *See* TEX. TAX CODE § 171.1016.

required the computation of the entity's margin, which was the lesser of: (1) 70% of total revenue; (2) an amount computed by subtracting cost of goods sold from total revenue; or (3) an amount computed by subtracting compensation paid to employees during the reporting period from total revenue.[2] Act of May 2, 2006, 79th Leg., 3rd C.S., ch. 1, § 5, 2006 Tex. Gen. Laws 1, 8 (former TEX. TAX CODE § 171.101(a)), current version at TEX. TAX CODE § 171.101(a)(1). While section 171.101(a) was amended to allow for an alternative means to determine margin, the subtraction of costs of goods sold from total revenue remains as an option for taxpayers. *See* TEX. TAX CODE § 171.101(a)(1)(B)(ii)(a)(1).

## A.     Texas Tax Code Section 171.1012

The calculation of cost of goods sold is governed by Tax Code section 171.1012, which permits a business to subtract certain of its costs to acquire or produce the goods sold. TEX. TAX CODE § 171.1012(a)(1), (b), (c). "Goods" are real or tangible personal property sold in the ordinary course of business of a taxable entity, but do not include any services. TEX. TAX CODE § 171.1012(a)(1), (a)(3)(B)(ii). The entity must own the goods that it sells in order to make a subtraction for cost of goods sold. TEX. TAX CODE § 171.1012(i). Among the costs

---

[2] Once the margin is calculated, a percentage of that margin is then apportioned to Texas, and that portion of the margin is subject to tax at the rate of 0.5% for qualifying retailers and wholesalers and 1.0% for all other taxable entities. TEX. TAX CODE §§ 171.106; 171.002(a), (b).

3

that may be included as cost of goods sold are labor costs to acquire the goods or to produce the goods. TEX. TAX CODE § 171.1012(c)(1). If an entity produced the goods that it sold, it may include its cost of materials that are an integral part of the specific property produced or which are consumed in the ordinary course of performing production activities. TEX. TAX CODE § 171.1012(c)(2), (c)(3). Production includes "construction, installation, manufacture, development, mining, extraction, improvement, creation, raising, or growth." TEX. TAX CODE § 171.1012(a)(2).

The language of these subsections remains unchanged from the time of their initial enactment in January 1, 2008. *Cf.* TEX. TAX CODE § 171.1012 to Act of May 2, 2006, 79th Leg., 3rd C.S., ch. 1, § 5, 2006 Tex. Gen. Laws 1, 13–16.

### B.    Comptroller Rule 3.588

In September 2007, following the passage of the enacting legislation for Section 171.1012, the Comptroller proposed Rule 3.588 to implement section 171.1012. *See* 32 Tex. Reg. 6288, 6288–92 (2007). The rule was adopted on December 28, 2007, and it went into effect on January 1, 2008, the same day as section 171.1012. *See* 32 Tex. Reg. 10034, 10034–38 (2007).

Among the provisions of Rule 3.588 that are relevant to this appeal are the following subsections, in pertinent part:

(b)  Definitions. The following words and terms, when used in this section, shall have the following meanings, unless the context clearly indicates otherwise.

    (3)  Goods—Real or tangible personal property sold in the ordinary course of business of a taxable entity.

    (7)  Production—Construction, manufacture, installation occurring during the manufacturing or construction process, development, mining, extraction, improvement, creation, raising, or growth;

    (10)  Tangible personal property—
      (B) does not include:
        (ii) services.

(c)  General rules for determining costs of goods sold.

    (7)  Mixed transactions. If a transaction contains elements of both a sale of tangible personal property and a service, a taxable entity may only subtract as cost of goods sold the costs otherwise allowed by this section in relation to the tangible personal property sold;

    (8)  Owner of goods. A taxable entity may make a subtraction under this section only if that entity owns the goods.

34 TEX. ADMIN. CODE § 3.588(b)(3), (b)(7), (b)(10)(b)(ii), (c)(7), (c)(8). These subsections have been in force and unchanged, apart from some renumbering, since January 1, 2008. *Cf.* 32 Tex. Reg. at 10035–36 to 38 Tex. Reg. 3415, 3417–18 (2013). Also pertinent are subsections (d)(1), (d)(2), and (d)(3), which were amended in 2013 for clarity and to better conform with applicable federal law and section 171.1012. *See* 38 Tex. Reg. at 3416, 3419. As originally enacted and in effect at the time of Autohaus's claim, those subsections read:

5

(d)     Costs of goods sold. The cost of goods sold includes all direct costs of acquiring or producing the goods, including:

    (1)     labor costs including W-2 wages, IRS Form 1099 wages, temporary labor, payroll taxes and benefits;

    (2)     cost of materials that are an integral part of specific property produced; [and]

    (3)     cost of materials that are consumed in the course of performing production activities[.]

32 Tex. Reg. at 10036–37 (2007) (current version at 34 TEX. ADMIN. CODE § 3.588(d)(1), (d)(2), (d)(3)). [3]

---

[3] Those sections currently read:

(d) Direct costs. The cost of goods sold includes all direct costs of acquiring or producing the goods. Direct costs include:

    (1) Labor costs. A taxable entity may include in its costs of goods sold calculation labor costs, other than service costs, that are properly allocable to the acquisition or production of goods and are of the type subject to capitalization or allocation under Treasury Regulation Sections 1.263A-1(e) or 1.460-5 as direct labor costs, indirect labor costs, employee benefit expenses, or pension and other related costs, without regard to whether the taxable entity is required to or actually capitalizes such costs for federal income tax purposes;

    (2) Incorporated materials. A taxable entity may include in its costs of goods sold calculation the cost of materials that are an integral part of specific property produced.

    (3) Consumable materials. A taxable entity may include in its costs of goods sold calculation the cost of materials that are consumed in the ordinary course of performing production activities.

34 TEX. ADMIN. CODE § 3.588(d)(1), (d)(2), (d)(3).

## II.  AUTOHAUS'S TAX REPORT AND SUIT

### A.  Autohaus's 2009 Franchise Tax Report and the Comptroller's Audit

Autohaus is an automobile dealership. CR56. It both sells and repairs automobiles, hiring subcontractors to do some of its repair work. CR56.

In 2009, Autohaus filed its franchise tax report for Report Year 2009 covering its business activities from January 1, 2008 to December 31, 2008, and applied a cost-of-goods-sold deduction in the amount of $122,210,985 to calculate a taxable margin in the amount of $17,334,147. CR59. Using such deduction, Autohaus reported that it owed franchise taxes in the amount of $86,564. CR60. Autohaus's claimed cost-of-goods deduction included costs incurred in selling automobiles ("Selling Costs"), costs of labor and materials to repair automobiles ("Repair Costs"), and costs of subcontracted labor and materials to repair automobiles ("Subletting Costs"). CR57.

In the spring of 2012, the Comptroller conducted an audit of Autohaus's 2009 franchise tax report. CR127. Autohaus was requested to provide records necessary to conduct the audit, including cost-of-goods-sold workpapers. CR127. During the conduct of the audit, it was determined that Autohaus was deducting labor costs (both for its own employees and for its subcontractors) for maintenance and repairs on customer-owned automobiles as cost of goods sold. CR128. The Comptroller disallowed those deductions, but allowed cost-of-goods-sold

7

deductions for both labor and automobile parts when Autohaus provided documentation that the work was part of production activity on a car owned by Autohaus prior to offering it for sale in the ordinary course of business. CR128. The Comptroller also allowed cost-of-goods-sold deductions for the cost of any automobile parts used in any repair performed by Autohaus or its subcontractors when Autohaus provided supporting documentation. CR128.

On December 5, 2012, following the audit of Autohaus's 2009 franchise tax report, the Comptroller disallowed a portion of the claimed cost-of-goods-sold deduction, totaling $2,481,302, and adjusted the cost-of-goods-sold deduction to $119,729,683, resulting in additional franchise tax due by Autohaus of $12,384.18. CR68, 139–40, 142. The disallowed costs were in five categories labeled by Autohaus as follows: (1) SRV CUST LBR MB; (2) SRV WARR LAB M/B; (3) SRV SUBLET RPR M/B; (4) CUST LBR-MECH L/T; and (5) 4Y/50K MAINT MB. CR70, 140.

### B. Autohaus's Protest Letter and Protest Payment

On January 14, 2013, Autohaus tendered to the Comptroller a protest payment of the additional franchise tax assessed and the interest due thereon, a total of $14,227.09, along with a written protest letter. CR148, 13–16, 71–76, 153–58; *see* TEX. TAX CODE § 112.051 (requiring payment of taxes at issue due along with written protest as a prerequisite for filing suit under Subchapter B of

8

Chapter 112 of the Tax Code); TEX. TAX CODE § 112.052 (permitting the filing of a suit against the state to recover taxes required to be paid to the state if the person has first paid the tax at issue under protest); TEX. TAX CODE § 112.053(b) (limiting the issues to be determined in the suit to those arising from the reasons expressed in the written protest as originally filed).

In its protest letter, Autohaus explained that its costs-of-goods-sold deduction included costs incurred in selling automobiles ("Selling Costs"), in repairing automobiles ("Repair Costs"), and in subletting such repair work to others ("Subletting Costs"). CR13, 71, 153. Autohaus specified that the only matters at issue were the disallowed costs-of-goods-sold deductions for Repair Costs and Subletting Costs incurred in repairing automobiles. CR14, 72, 154.

Under the "Statement of Grounds for Protest" section of its protest letter, Autohaus asserted generally that it was entitled to include as costs of goods sold:

(1) "all of its Repair Costs, including labor costs, and all of its Subletting Costs, including labor costs and costs of materials;" or alternatively,

(2) "the costs of materials that were included in its Subletting Costs."

CR14, 72, 154. Autohaus also listed twelve additional specific assertions in the protest letter under its "Statement of Grounds for Protest", including that:

▪ the Comptroller's Rule 3.588(b)(7) "does not properly reflect legislative intent and is therefore invalid" (No. 5);

9

- the Comptroller's denial of "[Autohaus's] right to include" the Repair Costs and Subletting Costs at issue as costs of goods sold, "while permitting other similarly situated taxpayers to includes such costs as costs of goods sold"

    o "results in the disparate treatment of taxpayers within the same class" in violation of the equal and uniform taxation requirement of "Section 1 of Article VIII of the Texas Constitution" (No.8);

    o "constitutes the imposition of unequal rights among taxpayers and the granting of an exclusive separate privilege to certain taxpayers in violation of Section 3 of Article I of the Texas Constitution" (No.9);

    o "constitutes a violation of [Autohaus's] rights under the Equal Protection Clause of the United States Constitution" (Nos.10 and 11); and

    o "constitutes a violation of [Autohaus's] rights under the Due Process Clause of the United States Constitution" (No.12).

CR14–16, 72–74, 154–56. Autohaus tendered with its letter a protest payment of $14,227.09. CR17–18, 157–58.

## C. Autohaus's suit

On March 22, 2013, Autohaus filed suit against Appellants "pursuant to Chapters 112 and 171 of the Texas Tax Code," and raised five claims:

- "Plaintiff is Entitled to Include Labor Costs in its Cost of Goods Sold Deduction;"

- Plaintiff is Entitled to Include Subletting Costs in its Cost of Goods Sold Deduction;"

- "The Comptroller's Assessment of Tax Violates Plaintiff's Rights Under the Texas Constitution;"

- "The Comptroller's Assessment of Tax Violates Plaintiff's Rights Under the U.S. Constitution;" and

- "Plaintiff is Entitled to Declaratory Judgment and Recovery of Attorney's Fees under the Texas Uniform Declaratory Judgment Act."

CR4, 6, 8, 9, 11, 151, 163, 165, 166, 168. As relief, Autohaus prayed for:

(1) a judgment for a refund of the $14,227.09 in taxes and interest that were paid under protest;

(2) statutory interest on the same;

(3) costs of court;

(4) declarations under the Texas Uniform Declaratory Judgment Act ("UDJA") that:

(a) "[Autohaus] is entitled to a refund of the $14,227.09 in franchise tax and interest it paid under protest;"

(b) "The Comptroller's collection of tax is invalid because the Comptroller has denied [Autohaus's] rights to equal protection and equal and uniform taxation;"

(c) "The Comptroller's collection of tax violates [Autohaus's] equal protection and due process rights under the United States' Constitution and is therefore invalid;" and

(d) "The Comptroller's collection of tax violates the equal and uniform taxation provision of the Texas Constitution and is therefore invalid;"

(5) "Recovery of attorney's fees as authorized by Tex. Civ. Prac. & Rem. Code § 37.009;"

11

along with "[s]uch other relief as to which Plaintiff is justly entitled in law or equity." CR11, 12, 168, 169.

Autohaus filed *Plaintiff's Motion for Summary Judgment and Incorporated Brief* on May 23, 2014. CR32–84. Appellants filed *Defendants' Response to Plaintiff's Motion for Summary Judgment, Defendants' Cross-Motion for Summary Judgment and Defendants' Plea to the Jurisdiction* on June 17, 2014. CR93–177. The trial court heard both sets of motions on July 9, 2014, and on July 22, 2014 issued orders granting Autohaus's motion for summary judgment and denying Appellants' cross-motion for summary judgment and plea to the jurisdiction. CR196–98.

In its order granting Autohaus's motion for summary judgment, the trial court ordered that Autohaus was entitled to: (1) "include all of its labor costs associated with Repair Costs and all of its labor costs and materials costs associated with Subletting Costs involved in the installation of automotive parts in its cost of goods sold deduction;" (2) "a refund of the $14,227.09 in franchise tax that it paid in protest;" (3) "[statutory] interest accruing on the amount of [Autohaus's] refund claim;" and (4) "attorneys' fees." CR197–98. The trial court also ruled that "Texas Comptroller Rule 3.588(b)(7) as it applies to the term "production" is unconstitutional and invalid[.]" CR197. Appellants filed a motion for reconsideration that was denied on October 30, 2014. CR260.

A bench trial was held on April 21, 2015 to determine the amount of attorneys' fees and court costs to be awarded. CR344–45; 2RR5–7. Following the hearing, the trial court signed a "Proposed Final Judgment," CR337–41, but later vacated it and issued a final judgment signed on April 29, 2015. CR344–49. The Court's final judgment, which incorporated its July 22, 2014 rulings, ordered that Autohaus recover from Appellants "the following specific relief:

A.  Plaintiff is entitled to include all of its labor costs associated with Repair Costs and all of its labor costs and materials costs associated with Subletting Costs involved in the installation of automotive parts in its cost of goods sold deduction.

B.  Texas Comptroller Rule 3.588(b)(7) as it applies to the term 'production' is unconstitutional and invalid.

C.  Plaintiff is entitled a refund of the $14,227.09 in franchise tax that it paid in protest.

D.  Plaintiff is entitled to interest accruing on the amount of its refund claim as provided under Texas Tax Code § 112.060 and Texas Tax Code § 112.058(a)(4)[.]"

CR346–47. The court also awarded Autohaus court costs in the amount of $274.80 and "reasonable and necessary attorneys' fees incurred in pursuing its claim for declaratory relief" in certain specified amounts for trial and appeal. CR347.

Appellants filed a motion for new trial on May 29, 2015, which was denied, and notice of appeal was filed on July 10, 2015. CR 350–64, 383, 384–85.

13

## SUMMARY OF ARGUMENT

Autohaus's Chapter 112 claim fails because its labor costs for installing purchased automotive parts into or onto customers' automobiles during repairs are not costs of "acquiring or producing" the automotive parts. Autohaus purchases the parts for resale and so may deduct its costs of acquiring the parts; it does not produce the parts and so cannot deduct production costs. Autohaus's installation of the parts is not production of the parts, but rather a mixed transaction involving a sale of goods (automotive parts), and the provision of services (repairs). For installation labor to be a production cost, an entity must be installing materials onto or into property that it owns and is producing for sale. Autohaus does not own the customer's automobiles onto or into which the automotive parts are installed nor is it producing the customer's automobiles for sale.

Autohaus's challenge to Rule 3.588(b)(7) fails because the rule validly and constitutionally implements the Legislature's intent in Tax Code section 171.1012, and Autohaus provided no evidence supporting its constitutional challenges.

Autohaus's attempted UDJA claim fails because a challenge to the constitutionality or validity of an administrative rule does not fall within the scope of the UDJA, and Autohaus's claim was redundant of, and preempted by, its Chapter 112 claim. The court had no jurisdiction to grant any declaratory judgment or award attorneys' fees and costs.

14

# ARGUMENT

**I.** **AUTOHAUS'S INSTALLATION OF AUTOMOTIVE PARTS ONTO OR INTO CUSTOMER-OWNED AUTOMOBILES DURING REPAIR OR MAINTENANCE WORK IS NOT THE "PRODUCTION" OF THOSE PARTS UNDER SECTION 171.1012, AND THEREFORE THE LABOR COSTS FOR SUCH INSTALLATION MAY NOT BE DEDUCTED AS COSTS OF GOODS SOLD.**

**II.** **COMPTROLLER RULE 3.588(b)(7) IS BOTH VALID AND CONSTITUTIONAL.**

(Argued Jointly)

In its Tax Code Chapter 112 claim for a refund of franchise taxes paid under protest, Autohaus seeks to deduct labor costs for repair work performed on customer-owned automobiles as costs of goods sold when automotive parts are installed during the repair. Autohaus asserts that when repair work includes the installation of an automobile part, it is not a repair service to the customer, but the act of producing an automotive part for sale, and therefore both the actual cost of the part and the labor costs of the repair are deductible as costs of producing the automotive part.

But while Autohaus is correct that it may deduct its costs of acquiring the automotive parts that it later sells as part of a repair to a customer-owned automobile—*i.e.*, its actual costs to purchase the part—it may not also deduct labor costs for "producing" that same part when installing it onto or into a customer's automobile during those repairs. All of the labor costs that are at issue in this case were incurred by Autohaus when providing a mechanic to perform the service of

15

repairing customer's automobiles. Autohaus does not "produce" the automotive parts that its mechanics install during repairs of customer's vehicles; its only costs of "acquiring or producing" the parts for sale are its costs of purchasing those parts. It is therefore not entitled to deduct repair services labor as costs of goods sold.

Comptroller Rule 3.588(b)(7) clarifies that only installation done as a part of manufacturing or construction can be considered "production." Contrary to Autohaus's contentions, the Rule does not conflict with either Tax Code section 171.1012 or the Texas or U.S. Constitutions. Moreover, even without the application of Rule 3.588(b)(7) to Autohaus's claim, Autohaus's Chapter 112 claim fails because Autohaus does not produce the automotive parts that it purchases for sale to its customers as part of its repair services.

A. **Costs of goods sold under section 171.1012 include the cost of acquiring or producing goods for sale, but excludes the cost of providing services.**

At its most fundamental level, section 171.1012 creates certain threshold requirements for the deduction of costs as costs of goods sold.

Firstly, a taxable entity must have sold "goods"—i.e., real or tangible personal property, but not services—in the ordinary course of its business. TEX. TAX CODE § 171.1012(a)(1), (a)(3)(A), (a)(3)(B).

Secondly, the taxable entity must have had costs of "acquiring or producing" the goods that it sold, because it is the direct costs of the entity in acquiring or producing these goods for sale that are deductible as costs of goods sold. TEX. TAX CODE § 171.1012(c).

The more detailed descriptions under section 171.1012 of what specific costs qualify to be deducted must be considered in light of these two threshold requirements. Consistent with these threshold requirements, the Legislature requires that the taxable entity be the actual owner of the "real or tangible personal property" that will be "sold in the ordinary course of business." TEX. TAX CODE § 171.1012(a)(1), (a)(3), (i). Thus, a taxable entity may not deduct as costs of goods sold either the costs of performing services or the costs of acquiring or producing goods that it does not own or that it does not sell. TEX. TAX CODE § 171.1012(a)(1), (a)(3)(B)(ii), (i).

> **B.** **Section 171.1012 is ambiguous in regard to transactions involving both services and sales and in its use of the word "installation" because the labor involved in installation can take place either in the context of the production of a good for sale (deductible) or in the context of services performed for another (not deductible). Rule 3.588 addresses this ambiguity.**

Section 171.1012(c) allows the deduction of all direct costs for "acquiring or producing the goods" sold, including labor costs and "materials that are an integral part of specific property produced" or "materials that are consumed in the ordinary course of performing production activities." TEX. TAX CODE § 171.1012(c)(1), (2),

17

(3). Section 171.1012(a)(2) defines "production" as including "construction, installation, manufacture, development, mining, extraction, improvement, creation, raising, or growth." TEX. TAX CODE § 171.1012(a)(2).

However, section 171.1012 does not detail how "mixed transactions" that may involve both the sale of a good and the provision of a service—such as auto repairs, hair styling, and medical care—are to be handled. Likewise, section 171.1012 does not define the term "installation." This creates a latent ambiguity as personal property can be installed either onto or into property owned by another party during the rendition of a service for that party (e.g., the installation of hair extensions onto a person's hair during styling of a customer's hair), or onto or into property owned by the business entity in the course of producing a good for sale by that entity (e.g., installing hair, beads, or feathers onto a hair extension which will then be sold to a customer). Both of these ambiguities in the administration of the statute can be addressed by an administrative rule promulgated by the Comptroller. *See Zimmer US, Inc. v. Combs*, 368 S.W.3d 579, 586 (Tex. App.—Austin 2012, no pet.)(holding that Comptroller may address ambiguity in administration of statute by administrative rule and noting that "[T]he legislature does not need to include every specific detail or anticipate all unforeseen circumstances.") (internal quotations and citations omitted); *see also* TEX. TAX CODE § 111.002(a) (providing

18

Comptroller authority to adopt rules for enforcement of Tax Code provisions and collection of taxes).

The Comptroller addressed both of these ambiguities in Rule 3.588, specifically in subsections (c)(7)("Mixed transactions")—providing that if "a transaction contains elements of both a sale of tangible personal property and a service, a taxable entity may only subtract as cost of goods sold the costs otherwise allowed by this section in relation to the tangible personal property sold"—and in (b)(7), which specifies that installation in the context of production means "installation occurring during the manufacturing or construction process." 34 TEX. ADMIN. CODE § 3.588 (b)(7), (c)(7).

Subsections (b)(7) and (c)(7) of Rule 3.588 clarify that where there is a mixed transaction involving a service that includes the installation of a product owned by a business onto or into property owned by a customer, the installation labor retains its character as a service to the customer and so is not deductible as a cost of goods sold; rather, only the cost of the actual product owned by the business and sold to the customer is deductible as a cost of goods sold. *See* 34 TEX. ADMIN. CODE § 3.588(b)(7), (c)(7). If, however, the business itself installs a product owned by the business onto or into property owned by the business for purposes of producing a good for sale in the ordinary course of business, the

installation labor in that case is part of the production of the good for sale and so deductible as a cost of goods sold. *See* 34 TEX. ADMIN. CODE § 3.588 (b)(7).

**C.      Autohaus does not "produce" purchased automotive parts when it installs them onto or into customer-owned automobiles, but rather it engages in a mixed transaction involving a sale of the part and the provision of an automotive repair or maintenance service. Autohaus may deduct as costs of goods sold its cost of acquiring the automotive parts, but may not deduct labor costs for "producing" the parts by installing them onto or into customer-owned automobiles.**

The Texas Legislature, recognizing that some businesses purchase goods for sale and others produce goods for sale, permits a taxable entity to deduct as costs of goods sold its direct costs of "acquiring or producing" the goods that it sells. TEX. TAX CODE § 171.1012(c).  Autohaus purchases automotive parts for resale to its customers as part of repairs and so is entitled to deduct its direct costs of acquiring automotive parts that it sold. *See* TEX. TAX CODE § 171.1012(c). The Comptroller recognized this in its audit and allowed such deduction for any amount that Autohaus established as purchase costs for automotive parts sold. CR128. The Comptroller has always maintained that Autohaus is entitled to a cost-of-goods-sold deduction for its costs of purchasing automotive parts that it sold in the ordinary course of business, including parts sold as part of repair and maintenance work, and it provided Autohaus an opportunity to present those costs during the audit. CR128.

Autohaus, however, claims that it is entitled to deductions for both costs of "acquiring" the automotive parts (their purchase price), *and* costs of "producing" those same purchased automotive parts. Autohaus theorizes that because section 171.1012(a)(2) states that "'Production' includes . . . installation," Autohaus's act of installing the purchased automotive parts onto or into customer's automobiles during repairs is "producing" those parts for sale, and it may deduct its labor costs for those repairs as costs of "production." Autohaus misunderstands and misapplies section 171.1012.

Firstly, section 171.1012(c) provides for the deduction of costs of "acquiring *or* producing" the goods that an entity sells—in other words, the cost to buy or the cost to make those goods. TEX. TAX CODE § 171.1012(c)(emphasis added). Autohaus does not make the automobile parts that it sells; it purchases them. CR57, 128. As discussed *infra*, the act of installing them onto or into a customer's automobile does not render Autohaus the "producer" of those purchased parts.

Secondly, section 171.1012(a)(2) does not state that every occasion of every act named therein is the production of a good for sale, nor is it reasonable to apply such a broad interpretation. *See* TEX. TAX CODE § 171.1012(a)(2). Not every act of "improvement," or "growth," or "raising," for example, is the production of a good for sale. Rather, the subsection names acts that may be "include[d]" in the

21

production of goods for sale for those entities that make rather than buy goods for sale. *See id.*

Words must be interpreted in their statutory context. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 441 (Tex. 2011). The scope of a general word is therefore constrained by its statutory context. When a statute uses "words of a general nature" in connection with "particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation." *Hilco Elec. Coop. v. Midlothian Butane Gas Co., Inc.*, 111 S.W.3d 75, 81 (Tex. 2003). Thus "installation," as used in the context of "production" in section 171.1012, should not be construed as applying to installations that are not a part of actually producing a good for sale.

This is particularly significant in the case of installation. The distinction between installing personal property onto or into property owned by a customer, or onto or into property owned by the business, is critical in determining whether the installation labor is a service by the business, and so not deductible, or part of production costs for the business, and therefore deductible. Section 171.1012 highlights this distinction by specifying that a business may only "make a subtraction under this section in relation to the cost of goods sold only if that entity owns the goods" which are sold. TEX. TAX CODE § 171.1012(a)(1), (i). Section 171.1012 further makes clear that in the context of the production of goods, the

22

business *must own the property onto or into which materials are being installed* in order for the installation to be "production" because, in order to be direct costs of producing a good, materials must be "an integral part of specific property produced." TEX. TAX CODE § 171.1012(c)(2).

In the context of installation of parts onto or into an automobile, the item or "good" being "produced" by the "installation" of "materials" is the *automobile—* not the automotive part which, in the context of "installation," is the "material" being installed onto or into the "good." Thus, in order to deduct the costs of installing automotive parts onto or into an automobile as costs of producing the good (the automobile), Autohaus must own the automobile onto or into which the parts are being installed. *See* TEX. TAX CODE § 171.1012(a)(1), (a)(2), (c)(2), (i). Here Autohaus is seeking the deduction of labor for repairs only on customer-owned automobiles. Its installation of parts in that context is a service installation, which is not deductible under section 171.1012, and not a production cost for the production of an automobile that Autohaus owns and is preparing for sale.

Autohaus asserts that the good that it is "producing" is the automotive parts, but its argument that it "produces" automotive parts by installing them is a tautology. Installed materials must be "an integral part of the specific property produced" in order to be deductible as costs of "producing" a good. *See* TEX. TAX CODE § 171.1012(c)(2). Thus if the "goods" being produced are the automotive

23

parts, then the material "installed"—here, the automotive parts—must be an integral part of the automotive parts being produced. In other words, the automotive parts must be installed onto or into themselves and be an integral part of themselves. Autohaus's contention that it may "produce" a good by installing that same good is an unreasonable construction of subsections 171.1012(a)(2) and (c)(1).

Rather, for Autohaus to be able to receive a deduction for "installation" relative to the "production" of an automotive part, it must be installing some material onto or into that automotive part which becomes an integral part of the automotive part. For example, if Autohaus made a refurbished engine for the purpose of selling that engine to a customer, and in the course of making that engine it installed screws which became an integral part of that engine, Autohaus could claim the costs of the screws as materials used in the production of the engine and could claim the costs of labor to make that engine, including the labor to install the screws.

But that is not the case here. Autohaus did not install anything onto or into the automotive parts to "produce" them; it simply acquired them by purchase. Autohaus's act of installing purchased automobile parts onto or into customers' automobiles as part of repairs is not the "production" of the automotive parts, but rather simply a mixed transaction involving both the sale of a good (the automotive

24

part) and the rendering of a service (the repair labor). Under the plain language of Comptroller Rule 3.588(c)(7), which was not challenged in this case, if "a transaction contains elements of both a sale of tangible personal property and a service, a taxable entity may only subtract as cost of goods sold the costs otherwise allowed by this section in relation to the tangible personal property sold"—in this case, its actual cost of purchasing the automotive parts. 34 TEX. ADMIN. CODE § 3.588(c)(7).

Autohaus's claim for a cost-of-goods-sold deduction for labor costs in "producing" automotive parts by installing them onto or into customer-owned automobiles should be denied. The portion of the trial court's judgment granting Autohaus's Chapter 112 claim seeking a refund of franchise taxes paid in protest and all relief granted thereunder should be reversed and a take-nothing judgment entered in favor of Appellants.

### D. Autohaus's claim also fails under the application of Rule 3.588(b)(7), and the Rule is both valid and constitutional

The above analysis demonstrates that Autohaus's Chapter 112 claim fails even without the application of Comptroller Rule 3.588(b)(7) which Autohaus challenges. Autohaus's claim also fails when the language of Comptroller Rule 3.588(b)(7) is applied, as Autohaus's installation of the automotive parts did not occur "during the manufacturing or construction process" of the automotive parts, but during the course of repairs to customer's automobiles. *See* 34 TEX. ADMIN.

25

CODE § 3.588(b)(7); CR 56; *BFI Waste Systems of N. America, Inc. v. Martinez Envtl. Grp.*, 93 S.W.3d 570, 575 (Tex. App.—Austin 2002, pet. denied) (holding that valid agency rules have same force and effect as statutes).  For this reason also, the portion of the trial court's judgment on Autohaus's Chapter 112 claim and all relief thereunder should be reversed and a take-nothing judgment entered in favor of Appellants.

The trial court also declared that "Texas Comptroller Rule 3.588(b)(7) as it applies to the term "production" is unconstitutional and invalid." CR 197, 346.  As demonstrated *infra* in Issue IV, the trial court had no jurisdiction to consider Autohaus's attempted declaratory judgment claim and that claim should be dismissed for want of jurisdiction. However, even if the trial court had jurisdiction to consider such claim, Autohaus's challenges to the validity and constitutionality of the Rule fail on the merits.

### 1.    Autohaus's challenge to the Rule's validity

Autohaus argues that Rule 3.588(b)(7) is invalid because it includes the clarifying language "occurring during the manufacturing or construction process" in reference to "installation"—words which do not appear in the language of section 171.1012(a)(2).

But, as discussed *supra*, the term "installation" as used in section 171.1012(a)(2) is ambiguous, the Comptroller may adopt rules that reasonably

26

clarify the terms used in a statute, and an adopted rule does not contradict a statute by the mere addition of words not existing in the statute. *See Zimmer US, Inc.*, 368 S.W.3d at 586; *Myers v. State*, 169 S.W.3d 731, 735 (Tex. App.—Austin 2005, no pet.). Governmental agencies have a "unique understanding" of the statutes they administer, and a court will generally uphold an agency's interpretation of a statute it is charged with enforcing so long as the construction is reasonable and does not contradict the plain language of the statute. *R.R. Comm'n of Tex. v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 625, 629 (Tex. 2011). The court "need not consider whether the Commission's construction is the only—or the best—interpretation in order to warrant [the court's] deference," but only whether the "agency's interpretation of a statute it is charged with administering to be reasonable and in accord with the statute's plain language." *Id.* at 628. "It is precisely when a statutory term is subject to multiple understandings that [a court] should defer to an agency's reasonable interpretation" and thus where a "statutory scheme is subject to multiple interpretations, [a court] must uphold the enforcing agency's construction if it is reasonable and in harmony with the statute." *Id.* at 628, 629.

In determining whether an agency's interpretation is reasonable, a court begins with the language in the statute itself. *Id.* at 628. In determining legislative intent, a court must consider the statute's meaning in the context of the entire

27

statute, not merely review words, phrases, or clauses in isolation. *Id.*; *Myers*, 169 S.W.3d at 733. Furthermore, courts should not construe a provision in a manner inconsistent or out of harmony with other provisions of the statute even though the provision might be susceptible to such a construction standing alone. *Myers*, 169 S.W.3d at 733–34. Words in a statute cannot be interpreted apart from their context, and in interpreting statutory terms, a court should consider the term's meaning in the context of the entire statute. *TGS-NOPEC Geophysical Co*, 340 S.W.3d at 441.

The existing ambiguity in section 171.1012 regarding the term "installation" could be argued to allow businesses to deduct the costs of services to customers as costs of goods sold, in contravention to the fundamental principles of section 171.1012 prohibiting the inclusion of services as part of a cost-of-goods-sold deduction. Indeed, this is precisely what Autohaus is attempting to do—deduct its costs for labor for maintenance and repair services on customer-owned automobiles as costs of goods sold.

The Comptroller, anticipating such potential misapplications of the statute, adopted Rule 3.588(b)(7) to ensure that the Legislative intent of subsection 171.1012(a)(3)(B)(ii), prohibiting the inclusion of services as costs of goods sold,

28

was carried out.[4] The Comptroller has upheld that interpretation in Comptroller Decision 108, 124, Comptroller Decision 108, 125, and Comptroller Decision 108, 126, STAR Accession No. 201309781H, September 12, 2013 (holding that a taxpayer may not deduct labor charges for repair services as costs of goods sold, but may deduct labor related to producing body parts that it sells to end-use customers).

Although "services" is not defined in the Tax Code, the Texas Supreme Court has recognized that it "includes generally any act performed for the benefit of another under some arrangement or agreement whereby such act was to have been performed." *Kirby Lake Develop., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 839 (Tex. 2010) (internal quotations and citations omitted). Rule 3.588(b)(7) effectively precludes labor costs for installations performed "for the benefit of another," *i.e.*, installation services, from being deducted as costs of goods sold. This is in accordance with the legislative mandate that costs of providing services may not be deducted as cost of goods sold and ensures that

---

[4] This rule has been in effect as long as section 171.1012 itself. *See* 32 Tex. Reg. 10034, 10034–38 (2007); Act of May 2, 2006, 79th Leg., 3rd C.S., ch. 1, § 5, 2006 Tex. Gen. Laws 1, 13–16. The Legislature, although amending section 171.1012 in other respects in the interim, has never enacted any amendment that would negate the Comptroller's interpretation of installation for the purposes of production as being only installation occurring during the manufacturing or construction process.

installation labor costs are only included as costs of goods sold when they are not performed as a service.

Additionally, including the clarifying phrase "during the manufacturing or construction process" to the term installation as used in the context of production, ensures that the term installation will be interpreted in the same manner as the other actions included in "production"—construction, manufacture, development, mining, extraction, improvement, creation, raising, or growth—all of which describe actions in which the producer is bringing forth a product that it owns for ultimate sale, not an action performed as a service on behalf of another on property belonging to another. *See TGS-NOPEC Geophysical*, 340 S.W.3d at 441–42 (discussing the principle of statutory construction known as *noscitur a sociis,* or "it is known by its associates" that directs that similar terms be interpreted in a similar manner and applying it to terms in a statute); *Hilco Elec. Coop.*, 111 S.W.3d at 81("[W]hen words of a general nature are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation."); *Combs v. Chapel Zenray, Inc.*, 357 S.W.3d 751, 758–60 (Tex. App.—Austin 2011, pet. denied) (discussing the interpretation of the words "attach" and "attaching" in the context of a tax statute and rejecting taxpayer's "plain meaning" argument in favor of Comptroller's narrow construction). Thus Rule 3.588 does not conflict with section

171.1012(a)(2), but rather acts to ensure that the interpretation of "installation" is consistent with the other provisions of section 171.1012, and is therefore a reasonable interpretation of section 171.1012 and a valid rule.

Autohaus also argues that Rule 3.588(b)(7) is invalid because it contends that the Legislature, in section 171.1012(a)(2), intended for a taxable entity's installation of an item onto or into another party's personal property to constitute the "production" of that item for sale. As discussed *supra*, this argument is without merit because it relies on a misinterpretation of section 171.1012(a)(2) and (c)(1) that ignores the distinction between acquiring and producing a good for sale, the prohibition against deducting the cost of providing services, and most critically, the Legislature's requirement that in the context of the production of goods, the business must own the property onto or into which materials are being installed in order for installation to constitute production. *See* TEX. TAX CODE §171.1012(c)(2), (a)(3)(B)(ii), (i). Rule 3.588(b)(7) does not conflict with section 171.1012 in this regard either, but rather serves to implement the Legislature's intent by ensuring that only the labor costs of installing of materials into personal property owned by the business, and which is being produced for ultimate sale by the business, can be deducted as costs of goods sold.

Because Rule 3.588(b)(7) is a reasonable interpretation of section 171.1012 and does not contradict the language of the statute, it is valid and must be upheld

and accorded deference by this Court. *Texas Citizens*, 336 S.W.3d at 628. Under the application of such Rule, Autohaus is not entitled to a refund of any franchise taxes for labor costs on customer-owned automobiles and its Chapter 112 claim fails. Additionally, Autohaus's challenge to the validity of the Rule is without merit. Thus even if jurisdiction exists for a declaratory judgment regarding the Rule's validity, the trial court's judgment on this claim must be reversed and judgment rendered for Appellants.

### 2. Autohaus's Constitutional Challenges to the Rule

In its order granting summary judgment, and in its final judgment, the trial court also declared Rule 3.588(b)(7), as it applied to the term "production," to be "unconstitutional," without specifying which constitutional provisions the Rule violated. CR 197, 346. Autohaus's motion for summary judgment contended that the Comptroller's disallowance of Autohaus's cost-of-goods-sold deduction for its labor costs in repairing customer-owned automobiles violates the Equal and Uniform Taxation Clause of the Texas Constitution (Tex. Const. art. VIII, § 1(a)), the Equal Protection Clause of the Texas Constitution (Tex. Const. art. I, § 3), the Equal Protection Clause of the United States Constitution (U.S. Const. amend. XIV, § 1), and the Due Process Clause of the United States Constitution (U.S. Const. amend. XIV, § 1). CR47–50. As these were the only constitutional challenges raised by Autohaus in its summary judgment motion, the trial court at

most could only have found that the Rule violated one or more of those constitutional provisions. *See Stiles v. Resolution Trust Co.*, 867 S.W.2d 24, 26 (Tex. 1993)(holding that appellate court may not affirm summary judgment on ground not asserted in summary judgment motion).

In reviewing taxation laws, courts indulge a strong presumption of constitutional validity. *Upjohn Co. v. Rylander*, 38 S.W.3d 600, 609 (Tex. App.—Austin 2000, pet. denied). The mandate under the Texas Constitution that all taxes be equal and uniform "requires only that all persons falling within the same class be taxed alike." *Id.* Therefore, a litigant raising an equal and uniform taxation challenge must show that the State's classification at issue has no rational basis. *Texas Entm't Ass'n, Inc. v. Combs*, 431 S.W.3d 790, 800 (Tex. App.—Austin 2014, pet. denied), *cert. denied sub nom, Texas Entm't Ass'n Inc. v. Hegar*, 135 S.Ct. 1568 (2015). The requirements under Equal Protection Clause of the United States Constitution and Equal and Uniform Taxation under the Texas Constitution are substantially the same and if a litigant's Equal and Uniform Taxation challenge fails, so does any challenge based on the Equal Protection Clause of the U.S. Constitution or on the Equal Protection Clause of the Texas Constitution. *Upjohn Co.*, 38 S.W.3d at 609; *In re Nestle USA, Inc.*, 387 S.W.3d 610, 624 (Tex. 2012); *Combs v. STP Nuclear Operating Co.*, 239 S.W.3d 264, 275 (Tex. App.—Austin 2007, pet. denied)(holding that challenges under Texas's Equal Protection Clause

are evaluated using the same standard applied to challenges under the Equal Protection Clause of the U.S. Constitution).

Autohaus asserted that disallowance of its claimed deduction violated its equal and uniform tax and equal protection rights because it created an irrational tax classification, not related to the differences in doing business that affect the value of privilege of doing business, and caused Autohaus to pay significantly more in franchise tax than other similarly situated taxpayers who produce tangible property for sale in the state. CR 8–9, 47–49. But Autohaus did not identify the "similarly situated taxpayers" it alleged were paying significantly less in franchise tax for performing services, nor did it present any evidence to support its constitutional contentions. As discussed *supra*, the Comptroller's interpretation of section 171.1012, as applied in Rule 3.588(b)(7), implements the Legislature's intent that businesses providing services cannot deduct service costs as costs of goods sold and that deductions for the production of goods are limited to the owners of the good being produced for sale in the ordinary course of business. All of the taxable entities that are similarly situated to Autohaus and provide mixed services by installing parts during the course of providing repair services on property belonging to their customers are treated equally and all such taxpayers are subject to the requirements of Rule 3.588(b)(7) and the Comptroller's interpretation of section 171.1012.

If Autohaus is attempting to argue that it is being treated differently from taxpayers that install parts onto or into goods that such taxpayers own and produce for sale, this comparison will not lie because these are not similarly situated taxpayers. A taxpayer who owns a product and who installs materials onto or into that product as part of finalizing production so that the product may be sold in the ordinary course of business is clearly producing a product for sale as contemplated by section 171.1012 of the Tax Code and may therefore deduct its labor costs of producing the product. As discussed *supra*, Autohaus is not producing a product property for sale when it installs a purchased automotive part into a customer's automobile during repair services, and so has no costs of production, but only costs of acquisition. The Legislature's distinctions in section 171.1012 between those who purchase goods for sale and so have acquisition costs and those who produce goods and so have production costs, as well as its distinction between the sale of goods and the sale of services, are rational distinctions that directly affect the value of the privilege. The Comptroller's application of Rule 3.588(b)(7) implements the purposes of section 171.1012, groups similar things and differentiates dissimilar things, and relates to differences in doing business that affect the value of the privilege. Rule 3.588(b)(7) therefore does not violate either the Equal and Uniform Taxation Clause of Texas Constitution or the Equal Protection Clauses of either the U.S. Constitution of the Texas Constitution.

Autohaus's Due Process claim was based on its contention that "the Comptroller's disparate treatment requires Plaintiff to pay more in tax than other taxpayers for the same right to do business enjoyed by other companies, which constitutes an unconstitutional deprivation of Plaintiff's property without due process of law." CR 50. However, as in its arguments regarding equal and uniform protection and equal protection, Autohaus did not identify what taxpayers would pay less in taxes, much less establish this by any evidence, nor did it identify how it was being treated disparately or being deprived of property without due process of law. As noted *supra*, Rule 3.588(b)(7) is based on section 171.1012, which makes rational distinctions between businesses which acquire goods for sale and those who produce goods for sale, and between producers of goods and service providers, and treats like-situated taxpayers similarly. Rule 3.588(b)(7) does not violate the Due Process Clause of the U.S. Constitution.

Thus Rule 3.588(b)(7) does not violate any of the constitutional provisions complained of by Autohaus. It should be upheld, accorded deference by this court, and applied to Autohaus's Chapter 112 claims, which fail thereunder. Additionally, because Autohaus's constitutional challenges to the Rule are without merit, even if jurisdiction exists for a declaratory judgment regarding the Rule's constitutionality, the trial court's judgment on this claim must be reversed and judgment rendered for Appellants.

**III.** **EVEN IF A TAXABLE ENTITY MAY DEDUCT LABOR COSTS FOR INSTALLING AUTOMOTIVE PARTS ONTO OR INTO CUSTOMER-OWNED AUTOMOBILES DURING REPAIRS AS COSTS OF GOODS SOLD, MATERIAL ISSUES OF FACT PRECLUDE THE GRANTING OF SUMMARY JUDGMENT AND THE AWARD OF A SPECIFIC REFUND AMOUNT ON AUTOHAUS'S CHAPTER 112 CLAIM.**

Summary judgment is only proper when the evidence shows that there are no issues of material fact and that movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). It is the movant's burden to establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 548 (Tex. 1985). In determining whether a disputed material fact issue exists, a trial court is to take as true all evidence favorable to the non-movant and indulge every reasonable inference and resolve all doubts in favor of the non-movant. *Id.* at 548–49. In this case, Autohaus failed to establish that it was entitled to summary judgment on the amount of refund that it sought. A material fact issue exists as to the existence and amount of the amount of both labor and material costs that were involved in the installation of automotive parts and thus the amount of any tax refund due.

Autohaus's Controller's affidavit, an exhibit to Autohaus's motion for summary judgment, unambiguously recognizes that there was some "de minimus amount" of labor costs that were not part of the costs of installing new or replacement automotive parts. CR57. That affidavit affirmatively acknowledges that part of the labor costs claimed in its costs-of-goods-sold deduction were not

37

deductible. CR57. There was also a conflict between that affidavit, which implies that costs of materials were disallowed, CR57, and that of the Comptroller's auditor, Exhibit 1 to the Appellants' cross-summary judgment motion, which stated that all costs of materials for which documentation was provided were allowed in the audit. CR128. Because material facts remains in dispute—the actual amount of deductible labor and the costs of materials which were disallowed and so subject to refund—summary judgment awarding the entire sum paid in protest is precluded.

Moreover, the disallowed costs information provided by Autohaus on summary judgment—described as (1) SRV CUST LBR MB, (2) SRV WARR LAB M/B, (3) SRV SUBLET RPR M/B, (4) CUST LBR-MECH L/T, and (5) 4Y/50K MAINT MB with accompanying totals, *see* CR70—is insufficient to support the amount claimed by Autohaus as costs of goods sold as it does not specify what costs are included in such figures (labor, materials, other deductible costs, nondeductible costs?), nor does it segregate the labor costs involved in the installation of automotive parts from those labor costs that were not involved in the installation of automotive parts. Rather it simply lists *all* of the (unspecified) costs expended by Autohaus for service, labor, or maintenance performed on all customer automobiles by Autohaus or one of its subcontractors during the time period. While some of the costs in Autohaus's categories may be labor and

material used in the installation of automobile parts, it is impossible to determine from the evidence presented on summary judgment what portion of the total costs in each category that is. Autohaus's Controller's affidavit likewise suggests that other costs are included in these broad categories as it refers to "all labor costs included" and "all material costs included," in the Repair Costs and Subletting Costs, but does not specify what those amounts are nor does it state that the Repair Costs and Subletting Costs are exclusively comprised of labor and material costs. CR57.

Autohaus therefore, failed to produce evidence of a vital fact and precisely quantify those labor and material costs that actually qualified for the cost-of-goods-sold deduction under its own theory of the case. By failing to segregate labor and material costs involving the installation of parts from labor or other costs that do not, and instead simply presenting *all* of its costs for service, maintenance, and repair of customer's automobiles and seeking a refund for the same, Autohaus failed in its burden to establish the proper amount of refund and a material issue remains regarding what amount, if any, is due and payable. *See* TEX. TAX CODE §§ 112.060(a)(refund is limited to portion of money paid under protest which was unlawfully demanded and belongs to taxpayer); 111.104(a)(refund is limited to an amount of tax, penalty, or interest that has been unlawfully or erroneously collected). Further, conflicting evidence exists between the affidavits of the

39

Comptroller's auditor and Autohaus's Controller regarding whether there were any remaining disallowed material costs, and Autohaus's Controller admitted that not all of the disallowed labor costs involved the installation of materials. Thus even Autohaus's evidence establishes that the amount sought, and awarded to Autohaus, as a refund for costs of goods sold and accompanying interest, $14,227.09, includes some unspecified amount which was properly due and owing as tax, and therefore is not subject to refund.

Taking as true all evidence favorable to the non-movant, and indulging every reasonable inference and resolving all doubts in favor of the non-movant, *see Nixon*, 690 S.W.2d at 548–49, a disputed material fact issue exists as to the amount of refund, if any, that is due. Where a disputed material fact issue exists as to the existence or amount of a tax refund, summary judgment is precluded. *See El Paso Natural Gas Co. v. Strayhorn*, 208 S.W.3d 676, 686 (Tex. App.—Texarkana 2006, no pet.).

Autohaus failed to do more than raise a contested fact question as to the amount of any refund due, as it provided no factual support for its contentions that all of the disallowed labor costs involved the installation of materials and that the costs of any materials were disallowed, a claim contradicted by the Comptroller's evidence. As a material fact exists, summary judgment for Autohaus on the amount of refund was not proper. Therefore, if this Court holds that Autohaus should

prevail on its Chapter 112 claim, the Court should reverse the trial court's refund award on such claim and remand the case for a new trial on the proper amount of any refund.

**IV.** **THE TRIAL COURT HAD NO JURISDICTION TO CONSIDER AUTOHAUS'S ATTEMPTED CHALLENGE UNDER THE UNIFORM DECLARATORY JUDGMENT ACT TO COMPTROLLER RULE 3.588(B)(7) OR ITS REQUEST FOR ATTORNEYS' FEES AND COURT COSTS BECAUSE AUTOHAUS'S CLAIM DID NOT FALL WITHIN THE SCOPE OF THE UDJA AND WAS, APART FROM THE ATTORNEYS' FEES AND COURT COSTS REQUEST, REDUNDANT OF ITS CHAPTER 112 CLAIM.**

The trial court's summary judgment order and final judgment include a declaration that "Texas Comptroller Rule 3.588(b)(7) as it applies to the term 'production' is unconstitutional and invalid," and granted Autohaus attorneys' fees. CR197–98, 346–47. Neither specifies the legal basis for the declaratory judgment or award of attorneys' fees or costs, however, the only basis under which Autohaus's declaratory judgment and attorneys' fees and costs were sought was the UDJA. Autohaus claims that "[t]here is simply no other way to overturn an invalid regulatory provision" than an action under the UDJA. CR379 –80.

But a challenge to the validity and constitutionality of an administrative rule does not fall within the scope of the UDJA. Nor is a challenge to the validity and constitutionality of a rule an *ultra vires* claim. The trial court therefore had no jurisdiction to grant declaratory relief, attorney's fees, or court costs under the UDJA. Autohaus could have brought an action under section 2001.038 of the

41

Government Code, which explicitly provides for a declaratory judgment challenge to an administrative rule. But Autohaus chose not to do so, precluding declaratory relief on such basis. However, even if it had, the trial court would have had no jurisdiction to award any attorneys' fees or court costs. Finally, Autohaus's declaratory judgment claims were, aside from a request for an award of attorneys' fees and court costs, redundant of its Chapter 112 claim, and so Autohaus was not entitled to declaratory relief under the UDJA or any award of attorneys' fees or court costs.

The trial court's ruling on Autohaus's attempted declaratory judgment claim and its award of attorneys' fees and court costs should be reversed, and the attempted declaratory judgment claim should be dismissed for want of jurisdiction.

A. **A trial court may not grant a declaratory judgment regarding the validity and constitutionality of a rule under the UDJA, and therefore the trial court had no jurisdiction to grant a declaratory judgment nor attorney's fees or court costs under the UDJA in this case.**

This Court granted Autohaus's requested declaratory relief, finding that "Texas Comptroller Rule 3.588(b)(7) as it applies to the term 'production' is unconstitutional and invalid."

However, the UDJA, by its very terms, does not provide for the grant of a declaratory judgment regarding the validity of rules. *See* TEX. CIV. PRAC. & REM. CODE § 37.004(a). Section 37.004 relates exclusively to the construction or validity

of an "instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." *Id.*; *Texas State Bd. of Vet. Med. Examiners v. Giggleman*, 408 S.W.3d 696, 708 (Tex. App.—Austin 2013, no pet.). Further, to the extent that the UDJA applies to declaratory judgments against the State of Texas, it is limited to proceedings involving the validity and constitutionality of a "statute, ordinance, or franchise." *See* TEX. CIV. PRAC. & REM. CODE § 37.006.

Autohaus asserted below that because the trial court had to review and interpret tax statutes, particularly section 171.1012(a)(2), in making its determination on the validity of Rule 3.588(b)(7), Autohaus's action seeking a declaratory judgment on the validity of a *rule* is governed by section 37.004. However, the mere fact that a court must review and construe a statute in the course of making a legal ruling does not convert such an action into a declaratory action that falls under the UDJA. *See Giggleman*, 408 S.W.3d at 708. Indeed, in ruling on Autohaus's Chapter 112 claim, the trial court was required to review and construe section 171.1012, but that did not convert Autohaus's Chapter 112 claim, for which no attorney's fees may be awarded, into a UDJA action for which attorney's fees may be awarded. This Court has roundly rejected similar arguments, calling such attempts the "very use of the UDJA—*i.e.*, as a vehicle for

43

obtaining otherwise impermissible attorney's fees—that the Texas Supreme Court squarely held impermissible[.]" *Id.*

Even assuming arguendo that Autohaus's interpretation of section 37.004 is correct and that any action in which a court must construe a statute falls within the scope of the UDJA, the Legislature has not waived sovereign immunity for all actions against the State that might fall within the scope of section 37.004. Rather, as against the State, the language of section 37.004 is further limited by that of section 37.006, which provides:

> In any proceeding that involves the validity of a municipal ordinance or franchise, the municipality must be made a party and is entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard.

TEX. CIV. PRAC. & REM. CODE § 37.006(b). The Supreme Court has explained that section 37.006 waives sovereign immunity for challenges to the validity of an ordinance or statute. *See Texas Dep't of Trans. v. Sefzik*, 355 S.W.3d 618, 622 (Tex. 2011); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 n.6 (Tex. 2009). Autohaus did not challenge the validity of any statute or ordinance in this case, but rather argued that it is entitled to relief under the UDJA because "the Court determined a question of construction related to Texas Tax Code 171.1012(a)(2), which involves the associated Comptroller rule 3.588(b)(7)." CR231–32. This contention is incorrect. Autohaus did not seek a declaration on the

44

construction of a statute, and the trial court did not grant a declaration on the construction of a statute, but even if it had, the UDJA does not waive immunity for actions against the governmental entities which seek only the interpretation or construction of statutes or ordinances and do not challenge the validity of the statute or ordinance at issue. *City of McKinney v. Hank's Rest. Grp., L.P.*, 412 S.W.3d 102, 111–12 (Tex. App.—Dallas 2013, no pet.).[5]

Thus even if Autohaus's action seeking a declaration on the validity of a *rule* could be recharacterized, as Autohaus asserted, as an action seeking a declaration on the construction of a *statute*, and even if the trial court's ruling on the validity and constitutionality of a *rule* could be recharacterized as a declaratory ruling on the construction of a *statute*, Autohaus would not be entitled to any declaratory judgment regarding the construction of any statute under the UDJA, nor any attorney's fees or costs for such an action, because there is no waiver of sovereign immunity under the UDJA for an action seeking a declaratory judgment on the construction of a statute nor for any attorney's fees or costs for such an action. *See*

---

[5] *City of McKinney v. Hank's Restaurant Group, L.P.* involved a municipality so governmental immunity, not sovereign immunity was involved, but as is clear from the Court's discussion, there is no difference in the analysis as applied to either sovereign or governmental immunity. *See City of McKinney v. Hank's Rest. Grp., L.P.*, 412 S.W.3d 102, 111–12 (Tex. App.—Dallas 2013, no pet.).

TEX. CIV. PRAC. & REM. CODE § 37.006(b); *City of McKinney*, 412 S.W.3d at 111–12; *Giggleman*, 408 S.W.3d at 708–09.

Sovereign immunity is waived under Texas Government Code section 2001.038(a) for actions seeking a declaratory judgment on the validity of a rule. TEX. GOV'T CODE § 2001.038(a). Sovereign immunity is not waived under the UDJA for actions seeking a declaratory judgment on the validity of a rule or for actions seeking a declaratory judgment on the construction, rather than the validity, of a statute. *See* TEX. CIV. PRAC. & REM. CODE §§ 37.004(a), 37.006(b); *City of McKinney*, 412 S.W.3d at 111–12; *see also Sefzik*, 355 S.W.3d at 622; *Heinrich*, 284 S.W.3d at 373, n.6. Since Autohaus sought relief only under the UDJA, sovereign immunity was not waived for the declaration that the trial court granted regarding the validity and constitutionality of Rule 3.588(b)(7).

It follows then that if the trial court had no jurisdiction to render a declaratory judgment regarding the validity or constitutionality of Rule 3.588(b)(7) under the UDJA, it likewise had no jurisdiction to award attorney's fees under section 37.009. *See Giggleman*, 408 S.W.3d at 708–09; TEX. CIV. PRAC. & REM. CODE § 37.009. Therefore the portion of the trial court's judgment declaring Rule 3.588(b)(7) invalid and unconstitutional and awarding attorneys' fees and court costs should be reversed and Autohaus's claims seeking declaratory judgment and attorneys' fees and court costs should be dismissed for want of jurisdiction.

**B.     Autohaus did not raise a claim within the *ultra vires* exception.**

The trial court likewise had no jurisdiction over Autohaus's declaratory judgment claim under the *ultra vires* exception and its final judgment did not render a declaratory judgment on any *ultra vires* action. A declaratory judgment that a rule is invalid is not a declaratory judgment that a particular state officer has "acted without legal authority or failed to perform a purely ministerial act." *See* discussion of ultra vires actions in *Heinrich*, 284 S.W.3d at 372. It is simply a declaratory judgment that a rule is invalid.  The Legislature has provided a specific cause of action and waiver of sovereign immunity for a party that seeks to overturn an administrative rule—an action under Texas Government Code section 2001.038.  Autohaus simply chose not to bring such an action.

Furthermore, to the extent that Autohaus asserts that it was actually raising an *ultra vires* complaint that the Comptroller acted without legal authority or failed to perform a purely ministerial act,  Autohaus provided no arguments, evidence, or authorities in the summary judgment proceedings to support such a complaint, but rather asserted that that (1) the Rule is invalid and unconstitutional (which does not raise a complaint about any particular action by any particular state actor); and (2) the Comptroller unconstitutionally disallowed its deduction and assessed additional tax liability against it. But any complaints regarding the Comptroller's disallowance of Autohaus's deduction and assessment of additional tax liability

47

would be wholly redundant of Autohaus's complaints under its Chapter 112 claims and thus declaratory judgment on such complaints would not have been proper. *See Giggleman*, 408 S.W.3d at 707–09; and discussion *infra* in Section IV.D. Furthermore, the Texas Supreme Court recently clarified that a complaint that challenges a rule does not fall within the *ultra vires* exception. *See Patel v. Texas Dep't of Licensing & Regulation*, 469 S.W.3d 69, 76–77 (Tex. 2015).

**C.** **While Texas Government Code section 2001.038 provides courts with jurisdiction to grant declaratory judgments regarding the validity of a rule, such provision does not provide for the award of attorneys' fees or court costs. Thus even if Autohaus had raised such a claim, and the trial court had jurisdiction under section 2001.038 to grant a declaratory judgment on Rule 3.588(b)(7), it had no jurisdiction to award attorneys' fees or court costs.**

Texas Government Code section 2001.038 explicitly provides courts with jurisdiction to enter a declaratory judgment regarding the validity of an agency rule. TEX. GOV'T CODE § 2001.038 (providing that the "validity or applicability of a rule . . . may be determined in an action for declaratory judgment if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff."). Nevertheless, none of Autohaus's pleadings raised any request for a declaratory judgement under section 2001.038, and Autohaus expressly disavowed seeking any declaratory relief under section 2001.038, asserting that it only raised declaratory judgment claims under the UDJA. CR232–33. Thus the trial court would have had no

48

jurisdiction to grant declaratory relief regarding the validity and constitutionality of Rule 3.588(b)(7) under Government Code section 2001.038.

However, even if Autohaus had raised a claim challenging Rule 3.588(b)(7) under section 2001.038, and such claim was not redundant of its Chapter 112 claims (see discussion *infra*), the claim would have been without merit for the reasons discussed *supra* in II.D. Furthermore, section 2001.038, "unlike the UDJA, does not authorize attorney's fees." *Giggleman*, 408 S.W.3d at 708; *see* TEX. GOV'T CODE § 2001.038; *see also* discussion in *City of San Antonio v. Shavano Ranch*, No. 04-13-00623-CV, 2014 WL 631484, at *4–5 (Tex. App.—San Antonio Feb. 19, 2014, pet. denied)(mem. op.)(holding that even if a statute expressly provides for declaratory relief against State, a party bringing a declaratory judgment claim under that statute may not recover attorneys' fees under the UDJA). Thus, even assuming arguendo that Autohaus had pled a section 2001.038 claim, and such claim was not redundant of its Chapter 112 claims, the trial court was not authorized to award attorneys' fees or court costs.

### D. Autohaus may not recover attorneys' fees or court costs for redundant claims that fall under the exclusive jurisdiction of Chapter 112.

Additionally, the claims actually raised in Autohaus's petition were redundant of its claims under Tax Code Chapter 112.  Autohaus may not recover attorneys' fees or court costs for declaratory actions which are inherently part of,

49

incidental to, or arise out of statutory claims for which the recovery of attorney's fees was not permitted. *See Jackson v. State Office of Admin. Hearings*, 351 S.W.3d 290, 301 (Tex. 2011); *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 669–71 (Tex. 2009); and *John G. and Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 289 (Tex. 2002). Furthermore, Chapter 112 "provides exclusive remedies for relief from assessed taxes *on any basis*." *Sanadco, Inc. v. Office of Comptroller*, No. 03-11-00462-CV, 2015 WL 1478200, at *4 (Tex. App.—Austin March 25, 2015, pet. denied, motion for reh'g of pet. filed November 12, 2015)(emphasis in original).

The Legislature has waived sovereign immunity for Chapter 112 claims. Autohaus could and did raise its complaints about constitutional violations in its Chapter 112 claim. Autohaus also raised a complaint under Chapter 112 regarding the validity of Rule 3.588, and the trial court could rule on the validity of Rule 3.588(b)(7) as part of its determination of Autohaus's Chapter 112 claims. CR 14 (Autohaus's protest letter raising grounds for Chapter 112 claims); TEX. TAX CODE § 112.053(b) (limiting the issues to be determined in the suit to those arising from the reasons expressed in the written protest as originally filed). The Legislature has also provided a specific waiver of sovereign immunity for plaintiffs seeking to challenge a regulatory provision that affects a plaintiff's rights—Government Code section 2001.038.

But the Legislature did not provide a waiver of sovereign immunity for an award of attorney's fees for claims under either Tax Code Chapter 112 or Government Code section 2001.038. To the extent that Autohaus has attempted to recast its Chapter 112 claims and its rule challenge or Rule 3.588(b)(7) as challenges under the UDJA, its efforts are no different than those by plaintiffs that were condemned by this Court and the Texas Supreme Court for misuse of the UDJA. *See Jackson*, 351 S.W.3d at 301; *MBM Fin. Corp.*, 292 S.W.3d at 669–71; *Giggleman*, 408 S.W.3d at 708; *Strayhorn v. Raytheon E-Sys., Inc.,* 101 S.W.3d 558, 571–73 (Tex. App.—Austin 2003, pet. denied).

Furthermore, this Court has also recently held that attempts to be relieved of tax liability and penalties fall under the exclusive remedies of Chapter 112, even when framed as declaratory judgment challenges to rules, statutes, or *ultra vires* actions. *Sanadco*, 2015 WL 1478200, at *5. This Court explained that Chapter 112 provided three statutorily-permitted suits—suit after payment in protest, suit for injunction after paying or posting a bond, and a refund suit—and that aside from these three avenues of relief, Chapter 112 "'allows no actions to challenge or seek refund of the taxes to which it applies,' including declaratory judgment actions." *Id.*, quoting *In re Nestle USA, Inc.*, 359 S.W.3d 207, 209–10 (Tex. 2012); *see also* TEX. TAX CODE § 112.108. This Court concluded that actions under the UDJA were preempted by Chapter 112. *Id*. at *4.

51

Thus, to allow Autohaus to receive declaratory relief under the UDJA and recover its attorneys' fees and court costs in seeking a declaratory judgment regarding the validity and constitutionality of Rule 3.588(b)(7) in this case would not only be without statutory authority, but would permit the Autohaus to "frustrate the limits" that the Legislature intended by not permitting the recovery of attorneys' fees or court costs for Chapter 112 claims and section 2001.038 claims, and allow Autohaus to do precisely what was expressly condemned by the Texas Supreme Court in *MBM Financial*, "to use the [UDJA] as a vehicle to recover otherwise impermissible attorney's fees." *MBM Fin. Corp.*, 292 S.W.3d at 670, 669. Moreover, it would conflict with the Texas Supreme Court's and this Court's decision holding that the "*only* means by which a taxpayer may challenge the 'applicability, assessment, collection, or constitutionality'" of a state tax is through a Chapter 112 action, not an action under the UDJA. *Sanadco*, 2015 WL 1478200, at *5 (emphasis in original), quoting *Nestle*, 359 S.W.3d at 209.

### E. Conclusion

This Court should therefore reverse the trial court's judgment granting a declaratory judgment on Rule 3.588(b)(7) and its grant of attorneys' fees and court costs, and dismiss Autohaus's declaratory judgment claims for want of jurisdiction. Alternatively, if this Court determines Autohaus's declaratory judgment claim was not redundant of its Chapter 112 claim, or otherwise preempted by Chapter 112,

and that the trial court had jurisdiction to consider Autohaus's rule challenge under Texas Government Code section 2001.038, this Court should reverse the trial court's declaratory judgment ruling for the reasons set out *supra* in II.D, and reverse its award of attorneys' fees and court costs, dismissing Autohaus's claim for attorneys' fees and court costs for want of jurisdiction.

## PRAYER

For the foregoing reasons, Appellants pray this Court to reverse the judgment of the trial court, dismiss Autohaus's declaratory judgment claims for want of jurisdiction, and render judgment against Autohaus on its Chapter 112 claim, or alternately remand for a new trial to determine the amount of any refund. In the alternative, if this Court does not reverse the trial court's judgment on Autohaus's Chapter 112 claim, Appellants pray this Court to reverse the portion of the judgment related to Autohaus's declaratory judgment claims and dismiss Autohaus's declaratory judgment claims for want of jurisdiction or, alternatively, dismiss Autohaus's claims for attorneys' fees and court costs for want of jurisdiction and modify the judgment accordingly.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

53

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ROBERT O'KEEFE
Division Chief
Taxation Division

_/s/ Cynthia A. Morales_
CYNTHIA A. MORALES
Assistant Attorney General
Financial Litigation and Charitable Trusts Division
State Bar No. 14417420
P.O. Box 12548
Austin, Texas 78711-2548
Telephone: (512) 475-4470
Telecopier: (512) 477-2348
cynthia.morales@texasattorneygeneral.gov

*Counsel for Appellants Glenn Hegar, Comptroller of Public Accounts of the State of Texas, and Ken Paxton, Attorney General of the State of Texas*

## CERTIFICATE OF COMPLIANCE

In compliance with Texas Rule of Appellate Procedure 9.4(i)(2), this brief contains 12,554 words, excluding the portions of the brief exempted by Rule 9.4(i)(1), as determined by the computer program used to prepare this document.

_/s/ Cynthia A. Morales_
Cynthia A. Morales
Assistant Attorney General

# CERTIFICATE OF SERVICE

On December 14, 2015, this *Appellants' Brief* was served electronically through the electronic filing manager and/or via email as shown below:

David E. Colmenero                    dcolmenero@meadowscollier.com
Alex Pilawski                              apilawski@meadowscollier.com
MEADOWS, COLLIER,
REED, COUSINS, CROUCH
& UNGERMAN, L.L.P.


 */s/ Cynthia A. Morales*
Cynthia A. Morales
Assistant Attorney General

# APPENDIX

# APPENDIX

## TABLE OF CONTENTS

Final Judgment (CR344–49)..................................................................................A

Order Granting Plaintiff's Motion for Summary Judgment (CR197–98)................B

Order Denying Defendants' Motion for Summary Judgment and
Plea to the Jurisdiction (CR196)...........................................................................C

Affidavit of Autohaus Controller (CR56–57).......................................................D

Affidavit of Comptroller's auditor (CR127–29)....................................................E

Listing of Disallowed Costs (CR70)...................................................................... F

Autohaus's Protest Letter (CR71–74)....................................................................G

Tex. Tax Code § 171.1012....................................................................................H

34 Tex. Admin. Code § 3.588................................................................................. I

Tex. Tax Code § 112.052........................................................................................J

Tex. Tax Code § 112.053.......................................................................................K

Tex. Tax Code § 112.060........................................................................................L

Tex. Tax Code § 111.104......................................................................................M

Tex. Const.  art. VIII § 1.......................................................................................N

Tex. Const. art. I § 3..............................................................................................O

U.S. Const. amend. XIV, § 1 ................................................................................ P

Tex. Civ. Prac. & Rem. Code § 37.004 ................................................................Q

Tex. Civ. Prac. & Rem. Code § 37.006 ................................................................R

Tex. Civ. Prac. & Rem. Code § 37.009 ...................................................................... S

Tex. Gov't Code § 2001.038............................................................................... T

Tex. Tax Code § 112.108 .................................................................................U

# APPENDIX A

# Final Judgment

Filed in The District Court
of Travis County, Texas

APR 2 9 2015

At_____4:42 P.M.

Velva L. Price, District Clerk

Cause No. D-1-GN-13-000989

| | | |
|---|---|---|
| AUTOHAUS LP, LLP | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | 419th JUDICIAL DISTRICT |
| | § | |
| GLENN HEGAR, COMPTROLLER OF | § | |
| PUBLIC ACCOUNTS OF THE STATE | § | |
| OF TEXAS, AND KEN PAXTON, | § | |
| ATTORNEY GENERAL OF THE | § | |
| STATE OF TEXAS | § | |
| | § | |
| Defendants. | § | TRAVIS COUNTY, TEXAS |

## FINAL JUDGMENT

On July 22, 2014, the Court granted Plaintiff's Motion for Summary Judgment and entered an Order that Plaintiff is entitled to: (1) include all of its labor costs associated with Repair Costs and all of its labor costs and materials costs associated with Subletting Costs involved in the installation of automotive parts in its cost of goods sold deduction; (2) a refund of the $14,227.09 in franchise tax that it paid in protest; (3) interest accruing on the amount of its refund claim in accordance with Texas Tax Code Section 111.064; and (4) attorneys' fees. The Court also determined that Texas Comptroller Rule 3.588(b)(7) as it applies to the term "production" is unconstitutional and invalid. On that same date, the Court denied Defendant's Motion for Summary Judgment and Defendant's Plea to the Jurisdiction. Following the Court's Order of July 22, 2014, Defendants filed their Motion for Reconsideration of Trial Court's Rulings on Plaintiff's Motion for Summary Judgment, Defendants' Cross-Motion for Summary Judgment, and Defendants' Plea to the Jurisdiction, which was denied by the Court on October 30, 2014.

On the 21st day of April, 2015, a trial was held before the Court to determine the amount

Final Judgment – Page 1



Case # D-1-GN-13-000989

004006590



of attorneys' fees to be awarded, the amount of court costs, if any, to be awarded, and the statutory basis for any award of interest on the refund of $14,227.09 in franchise tax paid in protest. After receiving evidence and hearing arguments, the Court found that the following amounts of attorneys' fees were reasonable and necessary in pursuing Plaintiff's claim for declaratory relief at trial or are reasonable and necessary to defend the grant of Plaintiff's claim for declaratory relief on appeal:

(1) **$ 100,000** for amounts incurred through April 19, 2015;

(2) **$ 1,600** for attorneys' fees associated with the trial on the amount of Plaintiff's award of Attorneys' Fees;

(3) In the event Defendants file a Notice of Appeal and appeal this judgment to the Austin Court of Appeals and include an issue challenging the declaratory relief granted, **$ 45,000** for responding to that issue and for oral argument on that issue if granted;

(4) In the event that the Austin Court of Appeals denies relief on an issue challenging the declaratory relief granted and Defendants file a Petition for Rehearing or Petition for Rehearing En Banc with the Austin Court of Appeals seeking a rehearing or rehearing en banc on the appellate court's ruling on declaratory relief, **$ 5,000** for responding to the portion of the Petition for Rehearing or Petition for Rehearing En Banc regarding the ruling on the challenge of the declaratory relief granted.

(5) In the event Defendants file a Petition for Review with the Texas Supreme Court and raise an issue for review challenging the declaratory relief granted, **$ 6,000** for preparing and filing a Response to the issue raised in the Petition for Review challenging the declaratory relief granted.

(6) In the event the Texas Supreme Court orders full briefing on an issue raised in the Petition for Review challenging the declaratory relief granted, **$ 18,000** to brief such issue.

(7) If the Texas Supreme Court requires oral argument on an issue raised in the Petition for Review challenging the declaratory relief granted, **$ 6,000** to prepare and argue such issue.

Final Judgment – Page 2

(8) In the event Defendants file a Petition for Rehearing or Petition for Rehearing En Banc with the Texas Supreme Court seeking a rehearing or rehearing en banc on an issue raised for review challenging the declaratory relief granted, $ **6,000** for responding to such issue.

(9) All appellate attorneys' fees awarded herein are expressly conditioned on Plaintiff prevailing on the respective appeal.

The Court further found that court costs in this case were $274.80 and awarded Plaintiff that amount in court costs.

The Court further found that the proper statutory basis for any award of any interest on the refund of $14,227.09 in franchise tax paid in protest, is Texas Tax Code § 112.060 and Texas Tax Code § 112.058(a)(4).

Based on the Court's June 22, 2014 ruling on Plaintiff's Motion for Summary Judgment, its ruling on April 21, 2015, regarding reasonable and necessary attorney's fees, court costs, the proper statutory basis for any award of interest on the refund of $14,227.09 in franchise tax paid in protest, and the legal and equitable powers of the Court, Final Judgment is hereby rendered against Defendants, Glenn Hegar, successor to Susan Combs, Comptroller of Public Accounts of the State of Texas and Ken Paxton, successor to Greg Abbott, Attorney General of the State of Texas and in favor of Plaintiff Autohaus LP, LLP.

It is therefore ORDERED, ADJUDGED, AND DECREED that Plaintiff have and recover from Defendants the following specific relief:

A. Plaintiff is entitled to include all of its labor costs associated with Repair Costs and all of its labor costs and materials costs associated with Subletting Costs involved in the installation of automotive parts in its cost of goods sold deduction.

B. Texas Comptroller Rule 3.588(b)(7) as it applies to the term "production" is unconstitutional and invalid.

Final Judgment – Page 3

C.      Plaintiff is entitled a refund of the $14,227.09 in franchise tax that it paid in protest.

D.      Plaintiff is entitled to interest accruing on the amount of its refund claim as provided under Texas Tax Code § 112.060 and Texas Tax Code § 112.058(a)(4).

E.      Plaintiff is awarded court costs in the amount of $274.80.

F.      Plaintiff is awarded reasonable and necessary attorneys' fees incurred in pursuing its claim for declaratory relief through the entry of Final Judgment of $ **100,000** for amounts incurred through April 19, 2015. In addition, Plaintiff is entitled to an additional $ **1,600** for attorneys' fees associated with the trial on the amount of its award of Attorneys' Fees.

G.      In the event Defendants file a Notice of Appeal and appeal this judgment to the Austin Court of Appeals and include an issue challenging the declaratory relief granted, Plaintiff is awarded additional reasonable and necessary attorneys' fees of $ **45,000** for responding to that issue and oral argument on that issue if granted. In the event that the Austin Court of Appeals denies relief on an issue challenging the declaratory relief granted and Defendants file a Petition for Rehearing or Petition for Rehearing En Banc with the Austin Court of Appeals seeking a rehearing or rehearing en banc on the appellate court's ruling on declaratory relief, Plaintiff is awarded additional reasonable and necessary attorneys' fees of $ **5,000** for responding to the portion of the Petition for Rehearing or Petition for Rehearing En Banc regarding the ruling on the challenge of the declaratory relief granted. In the event Defendants file a Petition for Review with the Texas Supreme Court and raise an issue for review challenging the declaratory relief granted, Plaintiff is awarded additional reasonable and necessary attorneys' fees of $ **6,000** for preparing and filing a Response to the issue raised in the Petition for Review challenging the declaratory relief granted. In the event the Texas Supreme Court orders full briefing on an issue

Final Judgment – Page 4

raised in the Petition for Review challenging the declaratory relief granted, Plaintiff is awarded additional reasonable and necessary attorneys' fees of $ **18,000** to brief such issue. If the Texas Supreme Court requires oral argument on an issue raised in the Petition for Review challenging the declaratory relief granted, Plaintiff is awarded additional reasonable and necessary attorneys' fees of $ **6,000** to prepare and argue such issue. In the event Defendants file a Petition for Rehearing or Petition for Rehearing En Banc with the Texas Supreme Court seeking a rehearing or rehearing en banc on an issue raised for review challenging the declaratory relief granted, Plaintiff is awarded additional reasonable and necessary attorneys' fees of $ **6,000** for responding to such issue. All appellate attorneys' fees awarded herein are expressly conditioned on Plaintiff prevailing on the respective appeal.

All other relief not expressly granted herein is denied. This judgment finally disposes of all claims and all parties and is appealable.

**IT IS SO ORDERED.**

SIGNED this ___29___ day of ___April___, 2015.

_____
PRESIDING JUDGE

It is further ordered that the "Proposed Final Judgment" signed by the Court on April 21, 2015 is VACATED.

Final Judgment — Page 5

APPROVED AS TO FORM ONLY; DEFENDANTS DISAGREE WITH THE SUBSTANCE OF THE JUDGMENT AND INTEND TO CHALLENGE THE JUDGMENT ON APPEAL:

Cynthia A. Morales
State Bar No. 14417420
Assistant Attorney General
Financial Litigation, Tax, and Charitable Trusts Division
P.O. Box 12548
Austin, Texas 78711-2548
(512) 475-4470 - Direct Line
(512) 477-2348 – Fax
cynthia.morales@texasattorneygeneral.gov

*ATTORNEYS FOR DEFENDANTS*

APPROVED AS TO FORM:

**DAVID E. COLMENERO**
State Bar No. 24001908
**THOMAS L. FAHRING**
State Bar No. 24074194
**JASON B. FREEMAN**
State Bar No. 24069736
**ALEX J. PILAWSKI**
State Bar No. 24074899
MEADOWS, COLLIER, REED,
COUSINS, CROUCH & UNGERMAN, L.L.P.
901 Main Street, Suite 3700
Dallas, TX 75202
(214) 744-3700 Telephone
(214) 747-3732 Facsimile
dcolmenero@meadowscollier.com
tfarhing@meadowscollier.com
jfreeman@meadowscollier.com
apilawski@meadowscollier.com

**ATTORNEYS FOR PLAINTIFF**

Final Judgment – Page 6

349

# APPENDIX B


# Order Granting Plaintiff's Motion

# for Summary Judgment

Notice sent: Final Interlocutory None
Disp Parties: ALL
Disp code: DVD /CLS 4019
Redact pgs:
Judge DXB     Clerk TB

**Cause No. D-1-GN-13-000989**

Filed in The District Court
of Travis County, Texas

JUL 2 2 2014

At 11:16 A m.
Amalia Rodriguez-Mendoza, Clk.

| | | |
|---|---|---|
| AUTOHAUS LP, LLP | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 419th JUDICIAL DISTRICT |
| | § | |
| SUSAN COMBS, | § | |
| COMPTROLLER OF PUBLIC | § | |
| ACCOUNTS OF THE STATE OF | § | |
| TEXAS and GREG ABBOTT, | § | TRAVIS COUNTY, TEXAS |
| ATTORNEY GENERAL OF THE | § | |
| STATE OF TEXAS | § | |
| | § | |
| Defendants. | § | |

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Plaintiff Autohaus LP, LLP's Motion for Summary Judgment. Upon consideration of the same, Defendants' Response, Plaintiff's Reply, and the arguments of counsel, the Court is of the opinion that the motion is meritorious, and should be GRANTED in its entirety.

IT IS THEREFORE ORDERED that

(i)     Plaintiff is entitled to include all of its labor costs associated with Repair Costs and all of its labor costs and materials costs associated with Subletting Costs involved in the installation of automotive parts in its cost of goods sold deduction;

(ii)    Plaintiff is entitled to a refund of the $14,227.09 in franchise tax that it paid in protest;

(iii)   Texas Comptroller Rule 3.588(b)(7) as it applies to the term "production" is unconstitutional and invalid;

(iv)    Plaintiff is entitled to interest accruing on the amount of its refund claim as

1

provided under Texas Tax Code Section 111.064; and

(v)      Plaintiff's is entitled to attorneys' fees.

Signed this the ⬚ day of ⬚⬚⬚⬚, 2014

JUDGE PRESIDING

445995

2

# APPENDIX C

Order Denying Defendants' Motion
for Summary Judgment and Plea to the Jurisdiction

DC          BK14206 PG4

CAUSE NO. D-1-GN-13-000989

| | | |
|---|---|---|
| AUTOHAUS LP, LLP<br>Plaintiffs | § § § | IN THE DISTRICT COURTS |
| V. | § | OF TRAVIS COUNTY, TEXAS |
| SUSAN COMBS, COMPTROLLER OF<br>PUBLIC ACCOUNTS OF THE STATE<br>OF TEXAS, and GREG ABBOTT,<br>ATTORNEY GENERAL OF TEXAS<br>Defendants. | § § § § § § | 419TH JUDICIAL DISTRICT |

## ORDER DENYING DEFENDANTS' MOTION FOR
## SUMMARY JUDGMENT AND PLEA TO THE JURISDICTION

On July 9, 2014, the Court heard Plaintiff's Motion for Summary Judgment and Defendant's Response to Plaintiff's Motion for Summary Judgment, Cross Motion for Summary Judgment and Plea to the Jurisdiction. After due consideration, the Court issued a separate order on Plaintiff's Motion for Summary Judgment dated today and the Court rules as follows on Defendant's Cross Motion for Summary Judgment and Plea to the Jurisdiction:

It is hereby ORDERED that Defendants' Objection to Plaintiff's Exhibit 1 ¶ 6-11 is OVERRULED.

It is further ORDERED that Defendants' Motion for Summary Judgment and Defendants' Plea to the Jurisdiction are hereby DENIED.

IT IS SO ORDERED.

SIGNED on this _____ day of July, 2014.

DARLENE BYRNE
PRESIDING JUDGE

# APPENDIX D


# Affidavit of Autohaus Controller

Cause No. D-1-GN-13-000989

| | | |
|---|---|---|
| AUTOHAUS LP, LLP | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 419th JUDICIAL DISTRICT |
| | § | |
| SUSAN COMBS, | § | |
| COMPTROLLER OF PUBLIC | § | |
| ACCOUNTS OF THE STATE OF | § | |
| TEXAS and GREG ABBOTT, | § | |
| ATTORNEY GENERAL OF THE | § | TRAVIS COUNTY, TEXAS |
| STATE OF TEXAS | § | |
| | § | |
| Defendants. | § | |

## AFFIDAVIT OF RICHARD BURGER

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

Before me, the undersigned authority, on this date Richard Burger, and being duly sworn, stated under oath:

1.  My name is Richard Burger. I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated:

2.  I am the Controller at Autohaus LP, LLP.

3.  Autohaus LP, LLP is an automotive dealership organized as a limited liability partnership and headquartered in Plano, Texas.

4.  Autohaus LP, LLP computed its Texas franchise tax for the 2009 report year by deducting cost of goods sold. A true and correct copy of Autohaus LP, LLP's 2009 Texas Franchise Tax Report is attached as Exhibit "A" to this affidavit.

5.  Autohaus LP, LLP's cost of goods sold deduction for the 2009 report year included costs incurred in selling automobiles ("Sales Costs"), costs incurred in repairing automobiles ("Repair Costs"), and costs incurred in subcontracting such repair work to others ("Subletting Costs").

442312

1

# Ex. 1

6. Autohaus LP, LLP's Repair Costs for the 2009 report year encompassed costs attributable to labor and materials.

7. Autohaus LP, LLP's Subletting Costs for the 2009 report year encompassed costs attributable to subcontracted labor and materials.

8. Except for de minimis amounts, all of Autohaus LP, LLP's labor costs included in Repair Costs represent the costs of installing new or replacement automotive parts.

9. Except for de minimis amount, all of Autohaus LP, LLP's subcontracted labor costs included in Subletting Costs represent the costs of installing new or replacement automotive parts.

10. Autohaus LP, LLP's labor costs attributable to installing new or replacement automotive parts involves integrating automotive parts into automobiles so that the parts are set up and ready for use in the automobiles.

11. All of Autohaus LP, LLP's materials costs included in its Repair Costs and Subletting Costs represent costs of acquiring and producing goods that were sold.

*Affiant*, Richard Burger

SUBSCRIBED AND SWORN TO BEFORE ME on this 22 day of May, 2014, to certify which, witness my hand and official seal.

TONYA LEANNE FOREMAN
Notary Public, State of Texas
My Commission Expires
April 03, 2016

4·3 2016
My Commission Expires:

Notary Public in and for the
State of Texas

Tonya Foreman
Printed Name of Notary Public

442312

2

# APPENDIX E


# Affidavit of Comptroller's Auditor

| | |
|---|---|
| AutoHaus LP, LLP,<br>    Plaintiff, | IN THE DISTRICT COURT OF |
| v. | |
| Susan Combs, Comptroller of Public<br>Accounts of the State of Texas, and<br>Greg Abbott, Attorney General of the<br>State of Texas,<br>    Defendants. | TRAVIS COUNTY, TEXAS<br><br>419th JUDICIAL DISTRICT |

THE STATE OF TEXAS

COUNTY OF DALLAS

### Affidavit of Gem Zhan

Before me, the undersigned notary, on this day personally appeared Gem Zhan, the affiant. After I administered an oath to affiant, affiant testified:

"1.    My name is Gem Zhan. I am over 18 years of age. I have never been convicted of a crime of moral turpitude; and I am otherwise fully competent to provide this affidavit. I have personal knowledge of all facts and matters stated in this affidavit, and they are all true and correct."

"2.    I am an Auditor employed by the Texas Comptroller of Public Accounts. I work at the Dallas Audit Office. I have worked for the Comptroller since June 8, 1999. I am a certified public accountant."

"3.    In the months of April and May, 2012, I visited AUTOHAUS's offices in Plano. During the performance of my audit, I worked directly with the taxpayer's Principal and Chief Financial Officer Mary Hutchison ("Ms. Hutchison") to determine taxpayer's compliance with Texas franchise tax codes for Report Year 2009."

"4.    I requested from Ms. Hutchison all of the records necessary to conduct my audit. See attached document marked as "Exhibit A." AUTOHAUS's 2009 franchise tax report was based upon the taxpayer's business activities for the year ending December 31, 2008. ("Tax Period"). See attached document marked as "Texas Franchise Tax Report" and "Exhibit B."

"5.    After confirming taxpayer's compliance on franchise tax report components like total revenue, apportionment factor, and tax rate, I focused my efforts on the cost-of-goods-sold deduction.

# EXHIBIT 1

"6.     Ms. Hutchison and I focused the audit investigation specifically upon the service labor provided by AUTOHAUS to repair or install automobile parts upon customer-owned vehicles at the taxpayer's service department. Ms. Hutchison brought to my attention that some of the repair was done by sub-contractors."

"7.     The Comptroller auditor training I have taken during my employment has emphasized that the Texas Franchise Tax Code tax is based on a taxpayer's business activities. The cost-of-goods-sold deduction under Texas Tax Code § 171.1012 is limited to costs incurred as a result of "acquiring or producing goods" for sale. Based on my understanding from training, when a service department, either directly or through a subcontractor, repairs an automobile or installs automobile parts and other tangible personal property on a customer-owned motor vehicle, it has performed a service activity under the Texas Tax Code and the labor for such repair is not deductible as a cost of goods sold because the automobile is not then sold to the customer by the service department. However, the automobile parts and other tangible personal property used in that repair are eligible to be included in a cost-of-goods-sold deduction because the automobile parts and other tangible property used in the repair are sold to the customer (sale of acquired goods)."

"8.     In my review of AUTOHAUS' business activities and records for the Tax Period, I determined that auto repair performed by AUTOHAUS was considered mixed transactions as defined under 34 Texas Administrative Code § 3.588(c) (7) by providing a service, repairs to customer-owned motor vehicles, and selling goods in the form of automobile parts and other tangible personal property to its customers under Texas Tax Code § 171.1012(a). Therefore, in my audit, I allowed AUTOHAUS to include in its cost-of-goods-sold deduction all of the costs of acquiring and reselling the automobile parts and other tangible personal property that it and its subcontractors had used during the tax period, including those used in the performance of its repair and installation services, where AUTOHAUS provided supporting documentation."

"9.     Further, I granted AUTOHAUS the cost-of-goods-sold deduction for both labor and automobile parts and other tangible personal property used where Ms. Hutchison was able to provide documentation or other proof to show that the work was not performed as a service, but was rather performed as a production activity for work on a motor vehicle that AUTOHAUS owned prior to offering the motor vehicle for sale in the ordinary course of its business."

"10.     After I exhausted all of the documents and other material Ms. Hutchison presented to me to calculate and determine the service labor expenses for work AUTOHAUS performed on customer vehicles and included in its calculation of the cost-of-goods-sold deduction for Report Year 2009, I finalized my tax adjustment summary and supporting exam as shown in exhibit C. No adjustments were made in any components other than cost of goods sold. The results of my audit, as shown in Exam B and on the summary pages of my report, show that AUTOHAUS improperly included the service labor used to perform automotive repair and installation services upon motor vehicles belonging to its customers in its cost-of-goods-sold deduction for Report Year 2009. See attached document marked as "Summary Schedule" and "Exhibit C.""

"11. Based upon the business records and facts generated during the audit, the Comptroller provided AUTOHAUS with notification of audit results and assessed the taxpayer the sum of $12,384.18 in taxes for Report Year 2009. With interest through the statement date of December 5, 2012, the total additional amount due for Report Year 2009 was $14,170.93." See attached document marked as "Texas Notification of Audit Results" and "Exhibit D."

Further affiant sayeth not.

_____
Gem Zhan

SWORN TO AND SUBSCRIBED before me by *Gem Zhan* on this the 13ᵗʰ day of *June*, 2014.



Notary in and for the State of Texas
My Commission Expires: 07-05-2015

SONIA YVETTA LATHAM
Notary Public
STATE OF TEXAS
Commission Exp. 07-05-2015
Notary without Bond

# APPENDIX F


# Listing of Disallowed Costs

```
AUTOHAUS LP, LLP                                    EXAM B
PLANO, TX                                          PAGE 1 OF 1
AUDITED COST OF GOODS SOLD          TP#:   32036876442
REPORT YEAR                           2009
ACCOUNTING YEAR ENDING                12/31/2008
```

REPORTED COST OF GOODS SOLD          $122,210,985

----------------FROM THE FRANCHISE TAX REPORTS----------------

DISALLOWED COSTS
SRV CUST LBR MB                      1,105,775
SRV WARR LBR M/B                       352,454
SRV SUBLET RPR M/B                     746,582
CUST LBR-MECH L/T                      173,933
4Y/50K MAINT MB                        102,559

TOTAL DISALLOWED COSTS               2,481,302

AUDITED COST OF GOODS SOLD           $119,729,683

-----------------FORWARD TO TAX ADJUSTMENT SUMMARY-----------------------

COMMENTS:

o AMOUNTS ARE FROM TRIAL BALANCE SHEETS AND COST OF GOODS SOLD WORKPAPERS.

# APPENDIX G

Autohaus's Protest Letter

# MEADOWS, COLLIER, REED, COUSINS CROUCH & UNGERMAN, L.L.P.

ATTORNEYS AT LAW
A REGISTERED LIMITED LIABILITY PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
901 MAIN STREET, SUITE 3700
DALLAS, TEXAS 75202
(214) 744-3700
www.meadowscollier.com

DAVID E. COLMENERO, P.C.
Partner

FAX (214) 747-3732
WATS (800) 451-0093
dcolmenero@meadowscollier.com

January 14, 2013

Texas Comptroller of Public Accounts          ***Via Hand Delivery***
Dallas Northeast Enforcement Office
Attn: Cynthia Molina
9221 LBJ Freeway
Suite 100
Dallas, Texas 75243

RECEIVED
JAN 14 2013
C Molina

       Re:    Letter Conveying Payment Under Protest
              Taxpayer:      *Autohaus LP, LLP*
              Taxpayer No.:   32036876442
              Exam Period:    2009

Dear Sir/Madam:

Enclosed is a check in the amount of $14,227.09, submitted on behalf of Autohaus LP, LLP ("Taxpayer"). This payment is remitted as full payment of the amount owed in accordance with the enclosed Texas Notification of Audit Results dated December 5, 2012. Taxpayer makes this payment under protest. For the reasons that follow, Taxpayer maintains that the Texas Comptroller's assessment of franchise tax was incorrect. A Power of Attorney appointing David E. Colmenero as representative for Taxpayer is also enclosed.

Please file stamp the attached copy of this letter and check showing receipt of this letter.

Background

Taxpayer is an automotive dealership located in Plano, Texas. In its franchise tax report for 2009, Taxpayer claimed a cost-of-goods-sold deduction. Taxpayer's cost-of-goods-sold deduction included costs that it incurred in selling automobiles ("Sales Costs"), costs that it incurred in repairing automobiles ("Repair Costs"), and costs that it incurred in subletting such repair work to others ("Subletting Costs"). Only Taxpayer's

# Ex. 3

71

Repair Costs and Subletting Costs are at issue here. Both Taxpayer's Repair Costs and Taxpayer's Subletting Costs included labor costs and costs of materials.

The Comptroller assessed a total amount due of $14,170.93, including state and local tax of $12,384.18 and interest of $1,786.75. This assessment was based on the Comptroller's erroneous determination that Taxpayer could not include as cost of goods sold that portion of its Repair Costs attributable to labor and that Taxpayer could not include as cost of goods sold any of Taxpayer's Subletting Costs.

### Statement of Grounds for Protest

Taxpayer is entitled to include as cost of goods sold all of its Repair Costs, including labor costs, and all of its Subletting Costs, including labor costs and costs of materials. Alternatively, Taxpayer is entitled to include as cost of goods sold the costs of materials that were included in its Subletting Costs. Without limiting the generality of the preceding statements, Taxpayer provides the following additional information:

1) Under the Texas franchise tax, a taxpayer may elect to deduct the amount of its cost of goods sold from its total revenue in order to calculate its taxable margin. *See* Tex. Tax Code Ann. § 171.101(a)(1)(B)(ii)(a).

2) The cost-of-goods-sold deduction includes all direct costs of acquiring or producing goods. Tex. Tax Code Ann. § 171.1012(c). Labor costs and costs of materials are specifically included as costs of goods sold. Id. § 171.1012(c)(1),(2),(3).

3) "Production" for purposes of the cost-of-goods-sold deduction "includes construction, *installation*, manufacture, development, mining, extraction, improvement, creation, raising, or growth." Tex. Tax Code Ann. § 171.1012(a)(2) (emphasis added).

4) Because replacement of automotive parts necessarily involves the installation of tangible personal property, labor costs associated with the replacement and/or installation of automotive parts are cost of goods sold. *See* Tex. Tax Code § 171.1012(a)(2), (c)(1). Therefore, Taxpayer is entitled to include as costs of goods sold the costs attributable to labor in both its Repair Costs and its Subletting Costs.

5) The Comptroller's Rule 3.588(b)(7), which interprets the term "installation" that qualifies as production to include only "installation occurring during the manufacturing or construction process" does not properly reflect legislative intent and is therefore invalid. *See* 34 Tex. Admin. Code sec. 3.588(b)(7).

6) The Texas Comptroller has recognized in at least one other context that an automotive repair service company is in fact engaged in both selling and installing automotive parts. *See* Comptroller Hearing No. 103,786 (May 10, 2011)("Petitioner provided automotive repair services such as the sale and installation of automotive exhaust systems, transmissions, mufflers, brake linings, glass, and other items from various outlets in Texas."). Indeed, this factual finding has led the Comptroller to

conclude that such entities may not qualify for the reduced .5% rate. *See id.* ("Establishments primarily engaged in both selling and installing automotive parts are considered to be engaged in services . . . .").

7) In addition, because replacement of automotive parts necessarily involves the installation of tangible person property, costs of materials used in the replacement and/or installation of automotive parts are also clearly costs of goods sold. See Tex. Tax Code § 171.1012(a)(2), (c)(2), (3). Therefore, Taxpayer is entitled to include as costs of goods sold all the costs of materials included in its Subletting Costs.

8) The Comptroller's denial of Taxpayer's right to include as cost of goods sold all of its labor costs and costs of materials used in the production of tangible personal property for sale, while permitting other similarly situated taxpayers to include such costs as cost of goods sold, results in the disparate treatment of taxpayers within the same class – i.e., businesses producing tangible personal property for sale to customers – in violation of the "equal and uniform taxation" requirement of Section 1 of Article 8 of the Texas Constitution. *See* Tex. Const. art. VIII, § 1; *In re Nestle USA, Inc.*, No. 12–0518, 2012 WL 5073315, at *6 (Tex. Oct. 19, 2012). The Comptroller's unequal application of the cost-of-goods-sold deduction is in violation of the "equal and uniform taxation" requirement in the Texas Constitution because it is arbitrary and not rationally related to any difference that affects the value of the privilege of doing business within Texas. *See Nestle*, 2012 WL 5073315, at * 7; *Bullock v. Sage Energy Co.*, 728 S.W.2d 465, 467-68 (Tex. App.–Austin 1987, writ ref'd n.r.e.).

9) The Comptroller's denial of Taxpayer's right to include as cost of goods sold all of its labor costs and costs of materials used in the production of tangible personal property for sale, while allowing other similarly situated taxpayers to include such costs as costs of goods sold, constitutes the imposition of unequal rights among taxpayers and the granting of an exclusive separate privilege to certain taxpayers in violation of Section 3 of Article 1 of the Texas Constitution. Tex. Const. art. 1, § 3.

10) The Comptroller's denial of Taxpayer's right to include as cost of goods sold all of its labor costs and costs of materials used in the production of tangible personal property for sale, while permitting other similarly situated taxpayers to include such costs as cost of goods sold, constitutes a violation of Taxpayer's rights under the Equal Protection Clause of the U.S. Constitution because it arbitrarily results in Taxpayer paying more tax than other similarly situated taxpayers. U.S. Const. amend. XIV, § 1.

11) The Comptroller's denial of Taxpayer's right to include as cost of goods sold all of its labor costs and costs of materials used in the production of tangible personal property for sale, while permitting other similarly situated taxpayers to include such costs as cost of goods sold, constitutes a violation of Taxpayer's rights under the Equal Protection Clause of the U.S. Constitution because Comptroller's disparate treatment of Taxpayer is based on a classification among taxpayers that is not supported by any rational basis and is arbitrary, capricious and unreasonable. *Id.*

12) The Comptroller's denial of Taxpayer's right to include as cost of goods sold all of its labor costs and costs of materials used in the production of tangible personal property for sale, while permitting other similarly situated taxpayers to include such costs as cost of goods sold, constitutes a violation of Taxpayer's rights under the Due Process Clause of the U.S. Constitution because Comptroller's disparate treatment requires Taxpayer to pay more tax for the same right to do business enjoyed by other companies, which constitutes an unconstitutional deprivation of Taxpayer's property without due process of law. U.S. Const. art. XIV, § 1.

Please contact me at the address or telephone number on this letter if you have any questions.

Respectfully,

DAVID E. COLMENERO, P.C.

David E. Colmenero, President

# APPENDIX H


Texas Tax Code § 171.1012

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

Vernon's Texas Statutes and Codes Annotated
    Tax Code (Refs & Annos)
        Title 2. State Taxation (Refs & Annos)
            Subtitle F. Franchise Tax (Refs & Annos)
                Chapter 171. Franchise Tax (Refs & Annos)
                    Subchapter C. Determination of Taxable Margin; Allocation and Apportionment

V.T.C.A., Tax Code § 171.1012

§ 171.1012. Determination of Cost of Goods Sold

Effective: September 1, 2013
Currentness

(a) In this section:

(1) "Goods" means real or tangible personal property sold in the ordinary course of business of a taxable entity.

(2) "Production" includes construction, installation, manufacture, development, mining, extraction, improvement, creation, raising, or growth.

(3)(A) "Tangible personal property" means:

(i) personal property that can be seen, weighed, measured, felt, or touched or that is perceptible to the senses in any other manner;

(ii) films, sound recordings, videotapes, live and prerecorded television and radio programs, books, and other similar property embodying words, ideas, concepts, images, or sound, without regard to the means or methods of distribution or the medium in which the property is embodied, for which, as costs are incurred in producing the property, it is intended or is reasonably likely that any medium in which the property is embodied will be mass-distributed by the creator or any one or more third parties in a form that is not substantially altered; and

(iii) a computer program, as defined by Section 151.0031.

(B) "Tangible personal property" does not include:

(i) intangible property; or

(ii) services.

(b) Subject to Section 171.1014, a taxable entity that elects to subtract cost of goods sold for the purpose of computing its taxable margin shall determine the amount of that cost of goods sold as provided by this section.

(c) The cost of goods sold includes all direct costs of acquiring or producing the goods, including:

(1) labor costs;

(2) cost of materials that are an integral part of specific property produced;

(3) cost of materials that are consumed in the ordinary course of performing production activities;

(4) handling costs, including costs attributable to processing, assembling, repackaging, and inbound transportation costs;

(5) storage costs, including the costs of carrying, storing, or warehousing property, subject to Subsection (e);

(6) depreciation, depletion, and amortization, reported on the federal income tax return on which the report under this chapter is based, to the extent associated with and necessary for the production of goods, including recovery described by Section 197, Internal Revenue Code;

(7) the cost of renting or leasing equipment, facilities, or real property directly used for the production of the goods, including pollution control equipment and intangible drilling and dry hole costs;

(8) the cost of repairing and maintaining equipment, facilities, or real property directly used for the production of the goods, including pollution control devices;

(9) costs attributable to research, experimental, engineering, and design activities directly related to the production of the goods, including all research or experimental expenditures described by Section 174, Internal Revenue Code;

(10) geological and geophysical costs incurred to identify and locate property that has the potential to produce minerals;

(11) taxes paid in relation to acquiring or producing any material, or taxes paid in relation to services that are a direct cost of production;

(12) the cost of producing or acquiring electricity sold; and

(13) a contribution to a partnership in which the taxable entity owns an interest that is used to fund activities, the costs of which would otherwise be treated as cost of goods sold of the partnership, but only to the extent that those costs are related to goods distributed to the taxable entity as goods-in-kind in the ordinary course of production activities rather than being sold.

(d) In addition to the amounts includable under Subsection (c), the cost of goods sold includes the following costs in relation to the taxable entity's goods:

(1) deterioration of the goods;

(2) obsolescence of the goods;

(3) spoilage and abandonment, including the costs of rework labor, reclamation, and scrap;

(4) if the property is held for future production, preproduction direct costs allocable to the property, including costs of purchasing the goods and of storage and handling the goods, as provided by Subsections (c)(4) and (c)(5);

(5) postproduction direct costs allocable to the property, including storage and handling costs, as provided by Subsections (c)(4) and (c)(5);

(6) the cost of insurance on a plant or a facility, machinery, equipment, or materials directly used in the production of the goods;

(7) the cost of insurance on the produced goods;

(8) the cost of utilities, including electricity, gas, and water, directly used in the production of the goods;

(9) the costs of quality control, including replacement of defective components pursuant to standard warranty policies, inspection directly allocable to the production of the goods, and repairs and maintenance of goods; and

(10) licensing or franchise costs, including fees incurred in securing the contractual right to use a trademark, corporate plan, manufacturing procedure, special recipe, or other similar right directly associated with the goods produced.

(e) The cost of goods sold does not include the following costs in relation to the taxable entity's goods:

(1) the cost of renting or leasing equipment, facilities, or real property that is not used for the production of the goods;

(2) selling costs, including employee expenses related to sales;

(3) distribution costs, including outbound transportation costs;

(4) advertising costs;

(5) idle facility expense;

(6) rehandling costs;

(7) bidding costs, which are the costs incurred in the solicitation of contracts ultimately awarded to the taxable entity;

(8) unsuccessful bidding costs, which are the costs incurred in the solicitation of contracts not awarded to the taxable entity;

(9) interest, including interest on debt incurred or continued during the production period to finance the production of the goods;

(10) income taxes, including local, state, federal, and foreign income taxes, and franchise taxes that are assessed on the taxable entity based on income;

(11) strike expenses, including costs associated with hiring employees to replace striking personnel, but not including the wages of the replacement personnel, costs of security, and legal fees associated with settling strikes;

(12) officers' compensation;

(13) costs of operation of a facility that is:

   (A) located on property owned or leased by the federal government; and

   (B) managed or operated primarily to house members of the armed forces of the United States; and

(14) any compensation paid to an undocumented worker used for the production of goods. As used in this subdivision:

   (A) "undocumented worker" means a person who is not lawfully entitled to be present and employed in the United States; and

   (B) "goods" includes the husbandry of animals, the growing and harvesting of crops, and the severance of timber from realty.

(f) A taxable entity may subtract as a cost of goods sold indirect or administrative overhead costs, including all mixed service costs, such as security services, legal services, data processing services, accounting services, personnel operations, and general financial planning and financial management costs, that it can demonstrate are allocable to the acquisition or production of goods, except that the amount subtracted may not exceed four percent of the taxable entity's total indirect or administrative overhead costs, including all mixed service costs. Any costs excluded under Subsection (e) may not be subtracted under this subsection.

(g) A taxable entity that is allowed a subtraction by this section for a cost of goods sold and that is subject to Section 263A, 460, or 471, Internal Revenue Code, may capitalize that cost in the same manner and to the same extent that the taxable entity capitalized that cost on its federal income tax return or may expense those costs, except for costs excluded under Subsection (e), or in accordance with Subsections (c), (d), and (f). If the taxable entity elects to capitalize costs, it must capitalize each cost allowed under this section that it capitalized on its federal income tax return. If the taxable entity later elects to begin expensing a cost that may be allowed under this section as a cost of goods sold, the entity may not deduct any cost in ending inventory from a previous report. If the taxable entity elects to expense a cost of goods sold that may be allowed under this section, a cost incurred before the first day of the period on which the report is based may not be subtracted as a cost of goods sold. If the taxable entity elects to expense a cost of goods sold and later elects to capitalize that cost of goods sold, a cost expensed on a previous report may not be capitalized.

(h) A taxable entity shall determine its cost of goods sold, except as otherwise provided by this section, in accordance with the methods used on the federal income tax return on which the report under this chapter is based. This subsection does not affect the type or category of cost of goods sold that may be subtracted under this section.

(i) A taxable entity may make a subtraction under this section in relation to the cost of goods sold only if that entity owns the goods. The determination of whether a taxable entity is an owner is based on all of the facts and circumstances, including the various benefits and burdens of ownership vested with the taxable entity. A taxable entity furnishing labor or materials to a project for the construction, improvement, remodeling, repair, or industrial maintenance (as the term "maintenance" is defined in 34 T.A.C. Section 3.357) of real property is considered to be an owner of that labor or materials and may include the costs, as allowed by this section, in the computation of cost of goods sold. Solely for purposes of this section, a taxable entity shall be treated as the owner of goods being manufactured or produced by the entity under a contract with the federal government, including any subcontracts that support a contract with the federal government, notwithstanding that the Federal Acquisition Regulation may require that title or risk of loss with respect to those goods be transferred to the federal government before the manufacture or production of those goods is complete.

(j) A taxable entity may not make a subtraction under this section for cost of goods sold to the extent the cost of goods sold was funded by partner contributions and deducted under Subsection (c)(13).

(k) Notwithstanding any other provision of this section, if the taxable entity is a lending institution that offers loans to the public and elects to subtract cost of goods sold, the entity, other than an entity primarily engaged in an activity described by category 5932 of the 1987 Standard Industrial Classification Manual published by the federal Office of Management and Budget, may subtract as a cost of goods sold an amount equal to interest expense. For purposes of this subsection, an entity engaged in lending to unrelated parties solely for agricultural production offers loans to the public.

(k-1) Notwithstanding any other provision of this section, the following taxable entities may subtract as a cost of goods sold the costs otherwise allowed by this section in relation to tangible personal property that the entity rents or leases in the ordinary course of business of the entity:

(1) a motor vehicle rental or leasing company that remits a tax on gross receipts imposed under Section 152.026;

(2) a heavy construction equipment rental or leasing company; and

(3) a railcar rolling stock rental or leasing company.

(k-2) This subsection applies only to a pipeline entity: (1) that owns or leases and operates the pipeline by which the product is transported for others and only to that portion of the product to which the entity does not own title; and (2) that is primarily engaged in gathering, storing, transporting, or processing crude oil, including finished petroleum products, natural gas, condensate, and natural gas liquids, except for a refinery installation that manufactures finished petroleum products from crude oil. Notwithstanding Subsection (e)(3) or (i), a pipeline entity providing services for others related to the product that the pipeline does not own and to which this subsection applies may subtract as a cost of goods sold its depreciation, operations, and maintenance costs allowed by this section related to the services provided.

(k-3) For purposes of Subsection (k-2), "processing" means the physical or mechanical removal, separation, or treatment of crude oil, including finished petroleum products, natural gas, condensate, and natural gas liquids after those materials are produced from the earth. The term does not include the chemical or biological transformation of those materials.

(l) Notwithstanding any other provision of this section, a payment made by one member of an affiliated group to another member of that affiliated group not included in the combined group may be subtracted as a cost of goods sold only if it is a transaction made at arm's length.

(m) In this section, "arm's length" means the standard of conduct under which entities that are not related parties and that have substantially equal bargaining power, each acting in its own interest, would negotiate or carry out a particular transaction.

(n) In this section, "related party" means a person, corporation, or other entity, including an entity that is treated as a pass-through or disregarded entity for purposes of federal taxation, whether the person, corporation, or entity is subject to the tax under this chapter or not, in which one person, corporation, or entity, or set of related persons, corporations, or entities, directly or indirectly owns or controls a controlling interest in another entity.

(o) If a taxable entity, including a taxable entity with respect to which cost of goods sold is determined pursuant to Section 171.1014(e)(1), whose principal business activity is film or television production or broadcasting or the distribution of tangible personal property described by Subsection (a)(3)(A)(ii), or any combination of these activities, elects to subtract cost of goods sold, the cost of goods sold for the taxable entity shall be the costs described in this section in relation to the property and include depreciation, amortization, and other expenses directly related to the acquisition, production, or use of the property, including expenses for the right to broadcast or use the property.

(p) to (s) [Blank].

(t) If a taxable entity that is a movie theater elects to subtract cost of goods sold, the cost of goods sold for the taxable entity shall be the costs described by this section in relation to the acquisition, production, exhibition, or use of a film or motion picture, including expenses for the right to use the film or motion picture.

**Credits**

Added by Acts 2006, 79th Leg., 3rd C.S., ch. 1, § 5, eff. Jan. 1, 2008. Amended by Acts 2007, 80th Leg., ch. 1282, §§ 14, 15, eff. Jan. 1, 2008; Acts 2013, 83rd Leg., ch. 1232 (H.B. 500), § 9, eff. Jan. 1, 2014; Acts 2013, 83rd Leg., ch. 1232 (H.B. 500), § 10(a), eff. Sept. 1, 2013.

V. T. C. A., Tax Code § 171.1012, TX TAX § 171.1012
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX I



34 Tex. Admin. Code § 3.588

Texas Administrative Code
    Title 34. Public Finance
        Part 1. Comptroller of Public Accounts
            Chapter 3. Tax Administration
                Subchapter V. Franchise Tax

34 TAC § 3.588

Tex. Admin. Code tit. 34, § 3.588

§ 3.588. Margin: Cost of Goods Sold

Currentness

(a) Effective Date. The provisions of this section apply to franchise tax reports originally due on or after January 1, 2008.

(b) Definitions. The following words and terms, when used in this section, shall have the following meanings, unless the context clearly indicates otherwise.

(1) Arm's length--The standard of conduct under which entities that are not related parties and that have substantially equal bargaining power, each acting in its own interest, would negotiate or carry out a particular transaction.

(2) Computer program--A series of instructions that are coded for acceptance or use by a computer system and that are designed to permit the computer system to process data and provide results and information. The series of instructions may be contained in or on magnetic tapes, printed instructions, or other tangible or electronic media.

(3) Goods--Real or tangible personal property sold in the ordinary course of business of a taxable entity. "Goods" includes:

(A) the husbandry of animals;

(B) the growing and harvesting of crops;

(C) the severance of timber from realty.

(4) Heavy construction equipment--Self-propelled, self-powered, or pull-type equipment that weighs at least 3,000 pounds and is intended to be used for construction. The term does not include a motor vehicle required to be titled and registered.

(5) Lending institution--An entity that makes loans and:

(A) is regulated by the Federal Reserve Board, the Office of the Comptroller of the Currency, the Federal Deposit Insurance Corporation, the Commodity Futures Trading Commission, the Office of Thrift Supervision, the Texas

Department of Banking, the Office of Consumer Credit Commissioner, the Credit Union Department, or any comparable regulatory body;

(B) is licensed by, registered with, or otherwise regulated by the Department of Savings and Mortgage Lending;

(C) is a "broker" or "dealer" as defined by the Securities Exchange Act of 1934 at 15 U.S.C. § 78c; or

(D) provides financing to unrelated parties solely for agricultural production.

(6) Principal business activity--The activity in which a taxable entity derives the largest percentage of its "total revenue".

(7) Production--Construction, manufacture, installation occurring during the manufacturing or construction process, development, mining, extraction, improvement, creation, raising, or growth.

(8) Related party--A person, corporation, or other entity, including an entity that is treated as a pass-through or disregarded entity for purposes of federal taxation, whether the person, corporation, or entity is subject to the tax under this chapter or not, in which one person, corporation, or entity, or set of related persons, corporations, or entities, directly or indirectly owns or controls a controlling interest in another entity.

(9) Service costs--Indirect costs and administrative overhead costs that can be identified specifically with a service department or function, or that directly benefit or are incurred by reason of a service department or function. For purposes of this section, a service department includes personnel (including costs of recruiting, hiring, relocating, assigning, and maintaining personnel records or employees); accounting (including accounts payable, disbursements, and payroll functions); data processing; security; legal; general financial planning and management; and other similar departments or functions.

(10) Tangible personal property--

(A) includes:

(i) personal property that can be seen, weighed, measured, felt, or touched or that is perceptible to the senses in any other manner;

(ii) films, sound recordings, videotapes, live and prerecorded television and radio programs, books, and other similar property embodying words, ideas, concepts, images, or sound, without regard to the means or methods of distribution or the medium in which the property is embodied, for which, as costs are incurred in producing the property, it is intended or is reasonably likely that any medium in which the property is embodied will be mass-distributed by the creator or any one or more third parties in a form that is not substantially altered; and

(iii) a computer program, as defined in paragraph (2) of this subsection.

(B) does not include:

(i) intangible property or

(ii) services.

(11) Undocumented worker--A person who is not lawfully entitled to be present and employed in the United States.

(c) General rules for determining cost of goods sold.

(1) Affiliated entities. Notwithstanding any other provision of this section, a payment made by one member of an affiliated group to another member of that affiliated group not included in the combined group may be subtracted as a cost of goods sold only if it is a transaction made at arm's length.

(2) Capitalization or expensing of certain costs. The election to capitalize or expense allowable costs is made by filing the franchise tax report using one method or the other. The election is for the entire period on which the report is based and may not be changed after the due date or the date the report is filed, whichever is later. A taxable entity that is allowed a subtraction by this section for a cost of goods sold and that is subject to Internal Revenue Code, §§ 263A, 460, or 471 (including a taxable entity subject to § 471 that elects to use LIFO under § 472), may elect to:

(A) Capitalize those costs in the same manner and to the same extent that the taxable entity capitalized those costs on its federal income tax return, except for those costs excluded under subsection (g) of this section, or in accordance with subsections (d), (e), and (f) of this section. A taxable entity that elects to capitalize costs on its first report due on or after January 1, 2008, may include, in beginning inventory, costs allowable for franchise tax purposes that would be in beginning inventory for federal income tax purposes.

(i) If the taxable entity elects to capitalize those costs allowed under this section as a cost of goods sold, it must capitalize each cost allowed under this section that it capitalized on its federal income tax return.

(ii) If the taxable entity later elects to begin expensing those costs allowed under this section as a cost of goods sold, the entity may not deduct any cost incurred before the first day of the period on which the report is based, including any ending inventory from a previous report.

(B) Expense those costs, except for those costs excluded under subsection (g) of this section, or in accordance with subsections (d), (e), and (f) of this section.

(i) If the taxable entity elects to expense those costs allowed under this section as a cost of goods sold, costs incurred before the first day of the period on which the report is based may not be subtracted as a cost of goods sold.

(ii) If the taxable entity later elects to begin capitalizing those costs allowed under this section as a cost of goods sold, costs incurred prior to the accounting period on which the report is based may not be capitalized.

(3) Election to subtract cost of goods sold. A taxable entity, if eligible, must make an annual election to subtract cost of goods sold in computing margin by the due date, or at the time the report is filed, whichever is later. The election to subtract cost of goods sold is made by filing the franchise tax report using the cost of goods sold method. An amended report may be filed within the time allowed by Tax Code, § 111.107 to change the method of computing margin to the cost of goods sold deduction method or from the cost of goods sold deduction method to the compensation deduction method, 70% of total revenue, or, if otherwise qualified, the E-Z computation method. An election may also be changed as part of an audit. See § 3.584 of this title (relating to Margin: Reports and Payments).

(4) Exclusions from total revenue. Any expense excluded from total revenue (see § 3.587 of this title (relating to Margin: Total Revenue)) may not be included in the determination of cost of goods sold.

(5) Film and broadcasting. A taxable entity whose principal business activity is film or television production or broadcasting or the sale of broadcast rights or the distribution of tangible personal property described by subsection (b) (10)(A)(ii) of this section, or any combination of these activities, and who elects to use cost of goods sold to determine margin, may include as cost of goods sold:

(A) the costs described in this section in relation to the property;

(B) depreciation, amortization, and other expenses directly related to the acquisition, production, or use of the property, including

(C) expenses for the right to broadcast or use the property.

(6) Lending institutions. Notwithstanding any other provision of this section, if the taxable entity is a lending institution that offers loans to the public and elects to subtract cost of goods sold, the entity may subtract as a cost of goods sold an amount equal to interest expense.

(A) This paragraph does not apply to entities primarily engaged in an activity described by category 5932 of the 1987 Standard Industrial Classification Manual published by the federal Office of Management and Budget.

(B) For purposes of this subsection, an entity engaged in lending to unrelated parties solely for agricultural production offers loans to the public.

(7) Mixed transactions. If a transaction contains elements of both a sale of tangible personal property and a service, a taxable entity may only subtract as cost of goods sold the costs otherwise allowed by this section in relation to the tangible personal property sold.

(8) Owner of goods. A taxable entity may make a subtraction under this section in relation to the cost of goods sold only if that entity owns the goods. The determination of whether a taxable entity is an owner is based on all of the facts and circumstances, including the various benefits and burdens of ownership vested with the taxable entity.

(A) A taxable entity furnishing labor or materials to a project for the construction, improvement, remodeling, repair, or industrial maintenance (as the term "maintenance" is defined in § 3.357 of this title (relating to Nonresidential Real Property Repair, Remodeling, and Restoration; Real Property Maintenance)), of real property is considered to be an owner of the labor or materials and may include the costs, as allowed by this section, in the computation of the cost of goods sold.

(B) Solely for the purposes of this section, a taxable entity shall be treated as the owner of goods being manufactured or produced by the entity under a contract with the federal government, including any subcontracts that support a contract with the federal government, notwithstanding that the Federal Acquisition Regulations may require that title or risk of loss with respect to those goods be transferred to the federal government before the manufacture or production of those goods is complete.

(9) Rentals and leases. Notwithstanding any other provision of this section, the following taxable entities may subtract as cost of goods sold the costs otherwise allowed by this section in relation to tangible personal property that the entity rents or leases in the ordinary course of business of the entity:

(A) a motor vehicle rental company that remits a tax on gross receipts imposed under Tax Code, § 152.026 or a motor vehicle leasing company;

(B) a heavy construction equipment rental or leasing company; and

(C) a railcar rolling stock rental or leasing company.

(10) Reporting methods. A taxable entity shall determine its cost of goods sold, except as otherwise provided by this section, in accordance with the methods used on the federal income tax return on which the report under this chapter is based. This subsection does not affect the type or category of cost of goods sold that may be subtracted under this section.

(11) Restaurants and bars. Entities engaged in activities described in Major Group 58 (Eating and Drinking Places) of the Standard Industrial Classification Manual may deduct for cost of goods sold only those expenses allowed under subsections (d), (e) and (f) of this section, that relate to the acquisition and production of food and beverages. Any costs related to both the production of food and beverages and to other activities must be allocated to production on a reasonable basis.

(d) Direct costs. The cost of goods sold includes all direct costs of acquiring or producing the goods. Direct costs include:

(1) Labor costs. A taxable entity may include in its cost of goods sold calculation labor costs, other than service costs, that are properly allocable to the acquisition or production of goods and are of the type subject to capitalization or allocation under Treasury Regulation Sections 1.263A-1(e) or 1.460-5 as direct labor costs, indirect labor costs, employee

benefit expenses, or pension and other related costs, without regard to whether the taxable entity is required to or actually capitalizes such costs for federal income tax purposes.

(A) For purposes of this section, labor costs include W-2 wages, IRS Form 1099 payments for labor, temporary labor expenses, payroll taxes, pension contributions, and employee benefits expenses, including, but not limited to, health insurance and per diem reimbursements for travel expenses, to the extent deductible for federal tax purposes.

(B) Labor costs under this paragraph shall not include any type of costs includable in subsection (f) or excluded in subsection (g) of this section. Costs for labor that do not meet the requirements set forth in this paragraph may still be subtracted as a cost of goods sold if the cost is allowed under another provision of this section. For example, service costs may be included in a taxable entity's cost of goods sold calculation to the extent provided by subsection (f) of this section.

(2) Incorporated materials. A taxable entity may include in its cost of goods sold calculation the cost of materials that are an integral part of specific property produced.

(3) Consumable materials. A taxable entity may include in its cost of goods sold calculation the cost of materials that are consumed in the ordinary course of performing production activities.

(4) Handling costs. A taxable entity may include in its cost of goods sold calculation handling costs, including costs attributable to processing, assembling, repackaging, and inbound transportation.

(5) Storage costs. A taxable entity may include in its cost of goods sold calculation storage costs, including the costs of carrying, storing, or warehousing property, subject to subsection (g) of this section, concerning excluded costs.

(6) Depreciation, depletion, and amortization. A taxable entity may include in its cost of goods sold calculation depreciation, depletion, and amortization reported on the federal income tax return on which the report under this chapter is based, to the extent associated with and necessary for the production of goods, including recovery described by Internal Revenue Code, § 197, and property described in Internal Revenue Code, § 179.

(7) Rentals and leases. A taxable entity may include in its cost of goods sold calculation the cost of renting or leasing equipment, facilities, or real property directly used for the production of the goods, including pollution control equipment and intangible drilling and dry hole costs.

(8) Repair and maintenance. A taxable entity may include in its cost of goods sold calculation the cost of repairing and maintaining equipment, facilities, or real property directly used for the production of the goods, including pollution control devices.

(9) Research and development. A taxable entity may include in its cost of goods sold calculation the costs attributable to research, experimental, engineering, and design activities directly related to the production of the goods, including all research or experimental expenditures described by Internal Revenue Code, § 174.

(10) Mineral production. A taxable entity may include in its cost of goods sold calculation geological and geophysical costs incurred to identify and locate property that has the potential to produce minerals.

(11) Taxes. A taxable entity may include in its cost of goods sold calculation taxes paid in relation to acquiring or producing any material, including property taxes paid on buildings and equipment, and taxes paid in relation to services that are a direct cost of production.

(12) Electricity. A taxable entity may include in its cost of goods sold calculation the cost of producing or acquiring electricity sold.

(13) A taxable entity may include in its cost of goods sold calculation a contribution to a partnership in which the taxable entity owns an interest that is used to fund activities, the costs of which would otherwise be treated as cost of goods sold of the partnership, but only to the extent that those costs are related to goods distributed to the contributing taxable entity as goods-in-kind in the ordinary course of production activities rather than being sold by the partnership.

(e) Additional costs. In addition to the amounts includable under subsection (d) of this section, the cost of goods sold includes the following costs in relation to the taxable entity's goods:

(1) deterioration of the goods;

(2) obsolescence of the goods;

(3) spoilage and abandonment, including the costs of rework, reclamation, and scrap;

(4) if the property is held for future production, preproduction direct costs allocable to the property, including storage and handling costs, as provided by subsection (d)(4) and (5) of this section;

(5) postproduction direct costs allocable to the property, including storage and handling costs, as provided by subsection (d)(4) and (5) of this section;

(6) the cost of insurance on a plant or a facility, machinery, equipment, or materials directly used in the production of the goods;

(7) the cost of insurance on the produced goods;

(8) the cost of utilities, including electricity, gas, and water, directly used in the production of the goods;

(9) the costs of quality control, including replacement of defective components pursuant to standard warranty policies, inspection directly allocable to the production of the goods, and repairs and maintenance of goods; and

(10) licensing or franchise costs, including fees incurred in securing the contractual right to use a trademark, corporate plan, manufacturing procedure, special recipe, or other similar right directly associated with the goods produced.

(f) Indirect or administrative overhead costs. A taxable entity may subtract as a cost of goods sold service costs, as defined in subsection (b)(9) of this section, that it can demonstrate are reasonably allocable to the acquisition or production of goods. The amount subtracted may not exceed 4.0% of total indirect and administrative overhead costs.

(1) Any costs already subtracted under subsections (d) or (e) of this section may not be subtracted under this subsection.

(2) Any costs excluded under subsection (g) of this section may not be subtracted under this subsection.

(g) Costs not included. The cost of goods sold does not include the following costs in relation to the taxable entity's goods:

(1) the cost of renting or leasing equipment, facilities, or real property that is not used for the production of the goods;

(2) selling costs, including employee expenses related to sales;

(3) distribution costs, including outbound transportation costs;

(4) advertising costs;

(5) idle facility expenses;

(6) rehandling costs;

(7) bidding costs, which are the costs incurred in the solicitation of contracts ultimately awarded to the taxable entity;

(8) unsuccessful bidding costs, which are the costs incurred in the solicitation of contracts not awarded to the taxable entity;

(9) interest, including interest on debt incurred or continued during the production period to finance the production of the goods;

(10) income taxes, including local, state, federal, and foreign income taxes, and franchise taxes that are assessed on the taxable entity based on income;

(11) strike expenses, including costs associated with hiring employees to replace striking personnel, but not including the wages of the replacement personnel, costs of security, and legal fees associated with settling strikes;

(12) officers' compensation;

(13) costs of operation of a facility that is:

(A) located on property owned or leased by the federal government; and

(B) managed or operated primarily to house members of the armed forces of the United States;

(14) any compensation paid to an undocumented worker used for the production of goods; and

(15) costs funded by a partnership contribution, to the extent that the contributing taxable entity made the cost of goods sold deduction under subsection (d)(13) of this section.

**Credits**
**Source:** The provisions of this §3.588 adopted to be effective January 1, 2008, 32 TexReg 10034; amended to be effective May 21, 2009, 34 TexReg 2982; amended to be effective June 5, 2013, 38 TexReg 3415.

Current through 40 Tex.Reg. No. 8414, dated November 20, 2015, as effective on or before November 27, 2015

34 TAC § 3.588, 34 TX ADC § 3.588

**End of Document**
© 2015 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX J


Texas Tax Code § 112.052

KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

Vernon's Texas Statutes and Codes Annotated
  Tax Code (Refs & Annos)
    Title 2. State Taxation (Refs & Annos)
      Subtitle B. Enforcement and Collection (Refs & Annos)
        Chapter 112. Taxpayers' Suits (Refs & Annos)
          Subchapter B. Suit After Protest Payment (Refs & Annos)

V.T.C.A., Tax Code § 112.052

§ 112.052. Taxpayer Suit After Payment Under Protest

Effective: October 1, 2011

Currentness

(a) A person may bring suit against the state to recover an occupation, excise, gross receipts, franchise, license, or privilege tax or fee required to be paid to the state if the person has first paid the tax under protest as required by Section 112.051 of this code.

(b) A suit under this section must be brought before the 91st day after the date the protest payment was made, or the suit is barred, except that for the tax imposed by Chapter 171 for a regular annual period, if an extension is granted to the taxpayer under Section 171.202(c) for filing the report and the taxpayer files the report on or before the last date of the extension period, the protest required by Section 112.051 may be filed with the report to cover the entire amount of tax paid for the period, and suit for the recovery of the entire amount of tax paid for the period may be filed before the 91st day after the date the report is filed. If the report is not filed on or before the last date of the extension period, a protest filed with the report applies only to the amount of tax, if any, paid when the report is filed.

(c) The state may bring a counterclaim in a suit brought under this section if the counterclaim relates to taxes or fees imposed under the same statute and during the same period as the taxes or fees that are the subject of the suit and if the counterclaim is filed not later than the 30th day before the date set for trial on the merits of the suit. The state is not required to make an assessment of the taxes or fees subject to the counterclaim under any other statute, and the period of limitation applicable to an assessment of the taxes or fees does not apply to a counterclaim brought under this subsection.

(d) A taxpayer shall produce contemporaneous records and supporting documentation appropriate to the tax or fee for the transactions in question to substantiate and enable verification of a taxpayer's claim relating to the amount of the tax, penalty, or interest that has been assessed or collected or will be refunded, as required by Section 111.0041.

**Credits**

Acts 1981, 67th Leg., p. 1512, ch. 389, § 1, eff. Jan. 1, 1982. Amended by Acts 1983, 68th Leg., p. 1373, ch. 283, § 6, eff. Sept. 1, 1983; Acts 1989, 71st Leg., ch. 232, § 5, eff. Sept. 1, 1989; Acts 1993, 73rd Leg., ch. 486, § 7.01, eff. Sept. 1, 1993; Acts 2011, 82nd Leg., 1st C.S., ch. 4 (S.B. 1), § 4.03, eff. Oct. 1, 2011.

V. T. C. A., Tax Code § 112.052, TX TAX § 112.052

Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX K


# Texas Tax Code § 112.053

KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

Vernon's Texas Statutes and Codes Annotated
  Tax Code (Refs & Annos)
    Title 2. State Taxation (Refs & Annos)
      Subtitle B. Enforcement and Collection (Refs & Annos)
        Chapter 112. Taxpayers' Suits (Refs & Annos)
          Subchapter B. Suit After Protest Payment (Refs & Annos)

V.T.C.A., Tax Code § 112.053

§ 112.053. Taxpayer Suit: Parties; Issues

Currentness

(a) A suit authorized by this subchapter must be brought against the public official charged with the duty of collecting the tax or fee, the comptroller, and the attorney general.

(b) The issues to be determined in the suit are limited to those arising from the reasons expressed in the written protest as originally filed.

(c) A copy of the written protest as originally filed must be attached to the original petition filed by the person paying the tax or fee with the court and to the copies of the original petition served on the comptroller, the attorney general, and the public official charged with the duty of collecting the tax or fee.

**Credits**

Acts 1981, 67th Leg., p. 1512, ch. 389, § 1, eff. Jan. 1, 1982. Amended by Acts 1987, 70th Leg., ch. 89, § 2, eff. Sept. 1, 1987; Acts 1997, 75th Leg., ch. 1423, § 19.05, eff. Sept. 1, 1997.

V. T. C. A., Tax Code § 112.053, TX TAX § 112.053

Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX L


# Texas Tax Code § 112.060

KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

Vernon's Texas Statutes and Codes Annotated
Tax Code (Refs & Annos)
Title 2. State Taxation (Refs & Annos)
Subtitle B. Enforcement and Collection (Refs & Annos)
Chapter 112. Taxpayers' Suits (Refs & Annos)
Subchapter B. Suit After Protest Payment (Refs & Annos)

V.T.C.A., Tax Code § 112.060

§ 112.060. Credit or Refund

Currentness

(a) If a suit under this subchapter results in a final determination that all or part of the money paid under protest was unlawfully demanded by the public official and belongs to the taxpayer, the comptroller shall credit the proper amount, with the pro rata interest earned on that amount, against any other amount finally determined to be due to the state from the taxpayer according to information in the custody of the comptroller and shall refund the remainder by the issuance of a refund warrant.

(b) A refund warrant shall be written and signed by the comptroller.

(c) Each tax refund warrant shall be drawn against each fund to which the taxes paid under protest are allocated by law. If there are not sufficient funds in each fund to which the taxes paid under protest are allocated by law to pay a refund required to be paid under Subsection (a) of this section, then the comptroller shall draw the warrant against the General Revenue Fund or other funds from which refund appropriations may be made, as the comptroller determines appropriate.

(d) The comptroller shall issue each tax refund warrant and shall deliver it to the person entitled to receive it.

(e) The comptroller may not refund an amount of tax to a taxpayer or person who collects taxes from another person unless the taxpayer or person refunds all the taxes to the person from whom the taxes were collected.

**Credits**

Acts 1981, 67th Leg., p. 1514, ch. 389, § 1, eff. Jan. 1, 1982. Amended by Acts 1985, 69th Leg., ch. 233, § 2, eff. June 3, 1985; Acts 1989, 71st Leg., ch. 232, § 8, eff. Sept. 1, 1989; Acts 1993, 73rd Leg., ch. 486, § 7.04, eff. Sept. 1, 1993; Acts 1997, 75th Leg., ch. 1040, § 9, eff. Sept. 1, 1997; Acts 1997, 75th Leg., ch. 1423, § 19.08, eff. Sept. 1, 1997.

Notes of Decisions (15)

V. T. C. A., Tax Code § 112.060, TX TAX § 112.060
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX M


# Texas Tax Code § 111.104

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

> Vernon's Texas Statutes and Codes Annotated
>   Tax Code (Refs & Annos)
>     Title 2. State Taxation (Refs & Annos)
>       Subtitle B. Enforcement and Collection (Refs & Annos)
>       Chapter 111. Collection Procedures (Refs & Annos)
>         Subchapter C. Settlements, Refunds, and Credits (Refs & Annos)

V.T.C.A., Tax Code § 111.104

§ 111.104. Refunds

Effective: June 20, 2003
Currentness

(a) If the comptroller finds that an amount of tax, penalty, or interest has been unlawfully or erroneously collected, the comptroller shall credit the amount against any other amount when due and payable by the taxpayer from whom the amount was collected. The remainder of the amount, if any, may be refunded to the taxpayer from money appropriated for tax refund purposes.

(b) A tax refund claim may be filed with the comptroller only by the person who directly paid the tax to this state or by the person's attorney, assignee, or other successor.

(c) A claim for a refund must:

  (1) be written;

  (2) state fully and in detail each reason or ground on which the claim is founded; and

  (3) be filed before the expiration of the applicable limitation period as provided by this code or before the expiration of six months after a jeopardy or deficiency determination becomes final, whichever period expires later.

(d) A refund claim for an amount of tax that has been found due in a jeopardy or deficiency determination is limited to the amount of tax, penalty, and interest and to the tax payment period for which the determination was issued. The failure to file a timely tax refund claim is a waiver of any demand against the state for an alleged overpayment.

(e) This section applies to all taxes and license fees collected or administered by the comptroller, except the state property tax.

(f) No taxes, penalties, or interest may be refunded to a person who has collected the taxes from another person unless the person has refunded all the taxes and interest to the person from whom the taxes were collected.

**Credits**

Acts 1981, 67th Leg., p. 1507, ch. 389, § 1, eff. Jan. 1, 1982. Amended by Acts 1989, 71st Leg., ch. 154, § 2, eff. Aug. 28, 1989; Acts 1999, 76th Leg., ch. 1467, § 2.13, eff. Oct. 1, 1999; Acts 2003, 78th Leg., ch. 1310, § 86, eff. June 20, 2003.

Notes of Decisions (51)

V. T. C. A., Tax Code § 111.104, TX TAX § 111.104
Current through the end of the 2015 Regular Session of the 84th Legislature

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

 © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX N


# Texas Constitution article VIII, § 1

KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

Vernon's Texas Statutes and Codes Annotated
  Constitution of the State of Texas 1876 (Refs & Annos)
    Article VIII. Taxation and Revenue

Vernon's Ann.Texas Const. Art. 8, § 1

§ 1. Equality and uniformity; tax in proportion to value; income tax;
exemption of certain tangible personal property from ad valorem taxation

Effective: December 1, 2009
Currentness

Sec. 1. (a) Taxation shall be equal and uniform.

(b) All real property and tangible personal property in this State, unless exempt as required or permitted by this Constitution, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law.

(c) The Legislature may provide for the taxation of intangible property and may also impose occupation taxes, both upon natural persons and upon corporations, other than municipal, doing any business in this State. Subject to the restrictions of Section 24 of this article, it may also tax incomes of both natural persons and corporations other than municipal. Persons engaged in mechanical and agricultural pursuits shall never be required to pay an occupation tax.

(d) The Legislature by general law shall exempt from ad valorem taxation household goods not held or used for the production of income and personal effects not held or used for the production of income. The Legislature by general law may exempt from ad valorem taxation:

(1) all or part of the personal property homestead of a family or single adult, "personal property homestead" meaning that personal property exempt by law from forced sale for debt;

(2) subject to Subsections (e) and (g) of this section, all other tangible personal property, except structures which are substantially affixed to real estate and are used or occupied as residential dwellings and except property held or used for the production of income;

(3) subject to Subsection (e) of this section, a leased motor vehicle that is not held primarily for the production of income by the lessee and that otherwise qualifies under general law for exemption; and

(4) one motor vehicle, as defined by general law, owned by an individual that is used in the course of the individual's occupation or profession and is also used for personal activities of the owner that do not involve the production of income.

(e) The governing body of a political subdivision may provide for the taxation of all property exempt under a law adopted under Subdivision (2) or (3) of Subsection (d) of this section and not exempt from ad valorem taxation by any other law. The Legislature by general law may provide limitations to the application of this subsection to the taxation of vehicles exempted under the authority of Subdivision (3) of Subsection (d) of this section.

(f) The occupation tax levied by any county, city or town for any year on persons or corporations pursuing any profession or business, shall not exceed one half of the tax levied by the State for the same period on such profession or business.

(g) The Legislature may exempt from ad valorem taxation tangible personal property that is held or used for the production of income and has a taxable value of less than the minimum amount sufficient to recover the costs of the administration of the taxes on the property, as determined by or under the general law granting the exemption.

(h) The Legislature may exempt from ad valorem taxation a mineral interest that has a taxable value of less than the minimum amount sufficient to recover the costs of the administration of the taxes on the interest, as determined by or under the general law granting the exemption.

(i) Notwithstanding Subsections (a) and (b) of this section, the Legislature by general law may limit the maximum appraised value of a residence homestead for ad valorem tax purposes in a tax year to the lesser of the most recent market value of the residence homestead as determined by the appraisal entity or 110 percent, or a greater percentage, of the appraised value of the residence homestead for the preceding tax year. A limitation on appraised values authorized by this subsection:

(1) takes effect as to a residence homestead on the later of the effective date of the law imposing the limitation or January 1 of the tax year following the first tax year the owner qualifies the property for an exemption under Section 1-b of this article; and

(2) expires on January 1 of the first tax year that neither the owner of the property when the limitation took effect nor the owner's spouse or surviving spouse qualifies for an exemption under Section 1-b of this article.

(i-1) Expired.

(j) The Legislature by general law may provide for the taxation of real property that is the residence homestead of the property owner solely on the basis of the property's value as a residence homestead, regardless of whether the residential use of the property by the owner is considered to be the highest and best use of the property.

(j-1) Expired.

**Credits**
Amended Nov. 7, 1978, eff. Jan. 1, 1979; Nov. 3, 1987; Nov. 7, 1989; Aug. 10, 1991; Nov. 2, 1993; Nov. 7, 1995; Nov. 4, 1997; Nov. 2, 1999; Nov. 6, 2001, eff. Nov. 26, 2001; Sept. 13, 2003, eff. Sept. 29, 2003; Nov. 6, 2007, eff. Dec. 4, 2007; Nov. 3, 2009, eff. Dec. 1, 2009.

**Editors' Notes**

## INTERPRETIVE COMMENTARY

### 2007 Main Volume

The tax system of the state of Coahuila and Texas left no lasting impression on the tax structure of the Republic of Texas. Most of the taxes under the rule of Mexico came from land dues, tithes, excise duties, stamp tax and custom duties. There were also taxes on income, on the export of coin and silver bullion, on the sale of the right of cock-pit locations, on billiard tables, on capturing mustangs and wild cattle, and on the sale of tobacco. But the state treasury was always in a "reduced" state, implying that the collection methods were probably far from adequate.

The distinctive features in the tax system of the Republic were the employment of specific duties, the fixing of a minimum valuation of land, and the discrimination against the property of non-residents. Specific duties and minimum valuations were designed to do away with undervaluation. Personal property--slaves, livestock, pleasure carriages, watches, clocks, and land certificates--constituted the most valuable property of the Republic and contributed the largest share of direct taxation. But the frontier counties, being harassed by both Indians and Mexicans resulting in the continual loss or destruction of property, usually failed to pay taxes on personal property.

There was no provision in the constitution of the Republic enjoining equality and uniformity of taxation, and the result was a mixed system of discriminating ad valorem and specific rates. When Texas became a state in 1845, the taxation section of the constitution (Art. 7, §§ 27, 28) was for the most part patterned after the Louisiana constitution which had been adopted early in 1845. It stipulated that taxation was to be equal and uniform, taxes to be assessed in proportion to the value of the property except that two-thirds of both houses could agree to exempt certain property from taxation. It permitted an income tax on occupations other than agricultural and mechanical pursuits, and exempted from taxation $250 worth of household or other property belonging to each family. This exemption is not found in any other state constitution of that time and is a Texas contribution to constitutional tax law.

The Constitutions of 1861 and 1866 repeated verbatim the provisos of the Constitution of 1845 (Art. 7, §§ 27, 28, Const.1861; Const.1866), but the Constitution of 1869 dropped the $250 exemption for household furniture.

By the close of the Civil War a complex tax system had been developed consisting of property and poll taxes, salary and occupation taxes. Under the Constitutions of 1866 and 1869, the property tax was the main source of revenue. Business income and salary taxes were levied by the reconstruction government, but the results were poor, and a gross receipts tax on railroads and telegraph companies and fixed taxes on insurance companies brought in meager returns. General property taxes also fell off considerably for with the emancipation of slaves who had been assessed for taxation at close of $140,000,000 taxable property to that amount was wiped out. The disfavor in which the reconstruction government was held strongly disinclined taxpayers to pay for its support, and there was a vast amount of property which escaped taxation through non-rendition, and in addition there was a great deal of delinquency in the payment of taxes assessed.

The Constitution of 1876, unlike previous constitutions, limited the state tax on property, exclusive of the tax to pay the public debt, to 50¢ on the $100 valuation of property (Art. 7, § 3). Occupational taxes, except on persons engaged in agricultural and mechanical pursuits were again authorized; a state income tax was permitted; a head tax, called poll tax, was authorized, and a tax of $1 for the benefit of the public schools was made a mandatory levy. In 1881 the poll tax was $2, of which $1 went to the general revenue fund, and $1 to the school fund. In 1882, the general revenue portion of the poll tax was reduced to 50¢ at which figure it has remained. In 1902, the constitutional requirement of the payment of the poll tax as a pre-requisite to voting was adopted (Art. 6, § 2). The Constitution of 1876 also reinstated the $250 exemption for household furniture which had been dropped by the Constitution of 1869.

The legislature attempted various devices to collect delinquent and unrendered property taxes which had accumulated under the reconstruction government, but the huge task of compiling the lists of such property proved to be so cumbersome a task that eventually most of these taxes were waived.

Property taxes are almost as old as the institution of private property, and are usually the principal source of state revenue; yet in 1946 and again in 1948, because of large surpluses in the treasury no property tax for general revenue was levied in Texas, these being the only two instances of its non-levy in the history of the state.

A special characteristic of the Texas tax system is the earmarking of receipts to specific functions. The underlying purpose of such earmarking is the desire to guarantee to a state function or service a certain basic amount of revenue, and this accounts for the fact that there is often no logical connection between a particular tax and the fund for which it is earmarked.

The taxes, all of the proceeds of which go to the general revenue fund, are the inheritance tax, the franchise, the general revenue poll tax, and the domestic charter and foreign corporation permit fees.

Taxes which are shared one-fourth by the available school fund and three-fourths by the general revenue are the chain store tax; gross receipt taxes on express, telegraph, car companies, pullman companies, and collection agencies; taxes on awards and prizes; and the general occupation taxes.

Of the net receipts of the vending machine and admissions taxes, the available school fund receives one-fourth, and the old age assistance fund receives the remaining three-fourths.

Of the net receipts of the motor fuel tax, the available school fund receives one-fourth, the county and district indebtedness fund, one-fourth, and the highway department receives the remaining one-half.

The proceeds of the boxing and wrestling tax, the citrus fruit tax, the gas utility pipeline tax, and the tax on feed stuffs go to enforcement funds though any unused balance is transferred to the general revenue fund.

The channeling of the other taxes is through the omnibus clearance fund which was set up in 1941. Into this fund go the receipts from the gross receipts and production taxes on local public utilities, telephone companies, natural and casing head gas, crude oil, carbon black, oil and gas well servicing, motor carriers, insurance companies, auto sales, radio sales, cosmetic sales, and the receipts from taxes on cement distributors, stock share transfers, playing cards and liquor, and cigarettes. Some of this fund is allocated to enforcement, one-fourth of the net after the deduction for enforcement is allocated to the available school fund, and the remainder is divided among the state blind assistance, state dependent children assistance, teachers' retirement, state old age assistance, farm-to-market roads, the foundation school fund, and if anything remains, the general revenue fund.

The Texas constitution requires equal and uniform taxation. It is generally recognized that all taxpayers are not in equal circumstances and that equal taxation of unequal circumstances would not be a valid application of the principle of equal and uniform taxes. It is generally accepted that equity may be more nearly satisfied if taxpayers in similar circumstances are treated equally. The United States Supreme Court has recognized this principle in its development of the doctrine of reasonable classification. Decisions of that court have sanctioned any classification which has a reasonable relation to some permitted end of governmental action. (See Alward v. Johnson, 51 S.Ct. 273, 282 U.S. 509, 75 L.Ed. 496; Carley & Hamilton v. Snook, 50 S.Ct. 204, 281 U.S. 66, 74 L.Ed. 704.)

Notes of Decisions (493)

Vernon's Ann. Texas Const. Art. 8, § 1, TX CONST Art. 8, § 1

Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX O


# Texas Constitution article I, § 3

Vernon's Texas Statutes and Codes Annotated
    Constitution of the State of Texas 1876 (Refs & Annos)
        Article I. Bill of Rights (Refs & Annos)

Vernon's Ann.Texas Const. Art. 1, § 3

§ 3. Equal rights

Currentness

Sec. 3. All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services.

**Editors' Notes**

**INTERPRETIVE COMMENTARY**

**2007 Main Volume**

All of the constitutions of the State of Texas have contained provisions guaranteeing to all persons equality of rights, the terminology used in Article I, Section 3 being a readoption in the same language of Article I, Section 2 of the Constitutions of 1845, 1861 and 1866. Equality of rights is a concept of republicanism, indigenous to America, finding first expression in the Declaration of Independence. Section 3 of Article I sets forth two meanings of equality, that of equal protection of the laws, and that of political equality.

Under the United States Constitution, the guaranty of equal protection of the laws was originally assumed by the states, but upon addition of the fourteenth amendment of that constitution the duty was expressly imposed upon the states in the following words: "nor [shall any State] deny to any person within its jurisdiction the equal protection of the laws." Broadly speaking equal protection of the laws means that all persons similarly circumstanced shall be treated alike both in privileges conferred and liabilities imposed. All free men have equal rights in the eyes of the government. Justice Field has defined the principle well in the United States Supreme Court case of Barbier v. Connolly, 5 S.Ct. 357, 113 U.S. 27, 28 L.Ed. 923 (1885). He declared: "that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and acquire and enjoy property; that they should have like access to the courts of the country for the protection of their persons and property, the prevention and redress of wrongs and the enforcement of contracts; that no impediment should be interposed to the pursuits of anyone except as applied to the same pursuits by others under like circumstances; that no greater burden should be laid upon one than are laid upon others in the same calling and conditions, and in the administration of criminal justice no different or higher punishment should be imposed upon one than such as is prescribed to all for like offenses."

Equal protection of the law does not prevent classifications in the law which subject some persons to a form of regulation from which others are relieved or confers upon some an advantage denied others. However equal protection does create a test for the classification and requires such to be reasonable, not arbitrary. The classification must be based on reasonable grounds to promote the general peace, good order, morals or health of the community, between classes substantially different from each other, and the classes established must include substantially all those who stand in a similar position with respect to the law. Conversely, if the classification brings about unjust, unreasonable or arbitrary discrimination it will be unconstitutional.

The terminology of Section 3 declaring that "no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services" is said to declare the principle of equality in political rights. The Supreme Court of Texas has asserted that this principle constitutes "...... a denial of all title to individual privileges, honors, and distinctions from the community but for public services. It was directed against superiority of personal and political rights, distinctions of rank, birth, or station, and all claims of emoluments from the community by any man or set of men, over any other citizen of the State." Glasgow v. Terrell, 100 T. 581, 102 S.W. 98 (1907).

Notes of Decisions (709)

Vernon's Ann. Texas Const. Art. 1, § 3, TX CONST Art. 1, § 3
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**                              © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX P


# U.S. Constitution amend XIV, § 1

United States Code Annotated
  Constitution of the United States
    Annotated
      Amendment XIV. Citizenship; Privileges and Immunities; Due Process; Equal Protection;
      Apportionment of Representation; Disqualification of Officers; Public Debt; Enforcement

U.S.C.A. Const. Amend. XIV-Full Text

AMENDMENT XIV. CITIZENSHIP; PRIVILEGES AND IMMUNITIES; DUE
PROCESS; EQUAL PROTECTION; APPOINTMENT OF REPRESENTATION;
DISQUALIFICATION OF OFFICERS; PUBLIC DEBT; ENFORCEMENT

Currentness

**Section 1.** All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

**Section 2.** Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

**Section 3.** No person shall be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may by a vote of two-thirds of each House, remove such disability.

**Section 4.** The validity of the public debt of the United States, authorized by law, including debts incurred for payment of pensions and bounties for services in suppressing insurrection or rebellion, shall not be questioned. But neither the United States nor any State shall assume or pay any debt or obligation incurred in aid of insurrection or rebellion against the United States, or any claim for the loss or emancipation of any slave; but all such debts, obligations and claims shall be held illegal and void.

**Section 5.** The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

<Section 1 of this amendment is further displayed in separate documents according to subject matter,>

<see USCA Const Amend. XIV, § 1-Citizens>

<see USCA Const Amend. XIV, § 1-Privileges>

<see USCA Const Amend. XIV, § 1-Due Proc>

<see USCA Const Amend. XIV, § 1-Equal Protect>

<sections 2 to 5 of this amendment are displayed as separate documents,>

<see USCA Const Amend. XIV, § 2,>

<see USCA Const Amend. XIV, § 3,>

<see USCA Const Amend. XIV, § 4,>

<see USCA Const Amend. XIV, § 5,>

U.S.C.A. Const. Amend. XIV-Full Text, USCA CONST Amend. XIV-Full Text
Current through P.L. 114-86 (excluding P.L. 114-74 and 114-81) approved 11-5-2015

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX Q


# Texas Civil Practice & Remedies Code § 37.004

Vernon's Texas Statutes and Codes Annotated
  Civil Practice and Remedies Code (Refs & Annos)
    Title 2. Trial, Judgment, and Appeal
      Subtitle C. Judgments
        Chapter 37. Declaratory Judgments (Refs & Annos)

V.T.C.A., Civil Practice & Remedies Code § 37.004

§ 37.004. Subject Matter of Relief

Effective: June 15, 2007
Currentness

(a) A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

(b) A contract may be construed either before or after there has been a breach.

(c) Notwithstanding Section 22.001, Property Code, a person described by Subsection (a) may obtain a determination under this chapter when the sole issue concerning title to real property is the determination of the proper boundary line between adjoining properties.

**Credits**

Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985. Amended by Acts 2007, 80th Leg., ch. 305, § 1, eff. June 15, 2007.

V. T. C. A., Civil Practice & Remedies Code § 37.004, TX CIV PRAC & REM § 37.004
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX R

Texas Civil Practice & Remedies Code § 37.006

Vernon's Texas Statutes and Codes Annotated
  Civil Practice and Remedies Code (Refs & Annos)
    Title 2. Trial, Judgment, and Appeal
      Subtitle C. Judgments
        Chapter 37. Declaratory Judgments (Refs & Annos)

V.T.C.A., Civil Practice & Remedies Code § 37.006

§ 37.006. Parties

Currentness

(a) When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties. A declaration does not prejudice the rights of a person not a party to the proceeding.

(b) In any proceeding that involves the validity of a municipal ordinance or franchise, the municipality must be made a party and is entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard.

**Credits**
Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985.

V. T. C. A., Civil Practice & Remedies Code § 37.006, TX CIV PRAC & REM § 37.006
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX S

Texas Civil Practice & Remedies Code § 37.009

KeyCite Yellow Flag - Negative Treatment

Proposed Legislation

Vernon's Texas Statutes and Codes Annotated
  Civil Practice and Remedies Code (Refs & Annos)
    Title 2. Trial, Judgment, and Appeal
      Subtitle C. Judgments
        Chapter 37. Declaratory Judgments (Refs & Annos)

V.T.C.A., Civil Practice & Remedies Code § 37.009

§ 37.009. Costs

[Currentness](#)

In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just.

**Credits**

Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985.

V. T. C. A., Civil Practice & Remedies Code § 37.009, TX CIV PRAC & REM § 37.009
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX T


# Texas Government Code § 2001.038

Vernon's Texas Statutes and Codes Annotated
  Government Code (Refs & Annos)
    Title 10. General Government (Refs & Annos)
      Subtitle A. Administrative Procedure and Practice
        Chapter 2001. Administrative Procedure (Refs & Annos)
          Subchapter B. Rulemaking

V.T.C.A., Government Code § 2001.038

§ 2001.038. Declaratory Judgment

Currentness

(a) The validity or applicability of a rule, including an emergency rule adopted under Section 2001.034, may be determined in an action for declaratory judgment if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff.

(b) The action may be brought only in a Travis County district court.

(c) The state agency must be made a party to the action.

(d) A court may render a declaratory judgment without regard to whether the plaintiff requested the state agency to rule on the validity or applicability of the rule in question.

(e) An action brought under this section may not be used to delay or stay a hearing in which a suspension, revocation, or cancellation of a license by a state agency is at issue before the agency after notice of the hearing has been given.

(f) A Travis County district court in which an action is brought under this section, on its own motion or the motion of any party, may request transfer of the action to the Court of Appeals for the Third Court of Appeals District if the district court finds that the public interest requires a prompt, authoritative determination of the validity or applicability of the rule in question and the case would ordinarily be appealed. After filing of the district court's request with the court of appeals, transfer of the action may be granted by the court of appeals if it agrees with the findings of the district court concerning the application of the statutory standards to the action. On entry of an order by the court of appeals granting transfer, the action is transferred to the court of appeals for decision, and the validity or applicability of the rule in question is subject to judicial review by the court of appeals. The administrative record and the district court record shall be filed by the district clerk with the clerk of the court of appeals. The court of appeals may direct the district court to conduct any necessary evidentiary hearings in connection with the action.

**Credits**
Added by Acts 1993, 73rd Leg., ch. 268, § 1, eff. Sept. 1, 1993. Amended by Acts 1999, 76th Leg., ch. 894, § 1, eff. Sept. 1, 1999.

V. T. C. A., Government Code § 2001.038, TX GOVT § 2001.038
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX U

# Texas Tax Code § 112.108

KeyCite Red Flag - Severe Negative Treatment

Unconstitutional or Preempted **Recognized as Unconstitutional by** Combs v. Texas Small Tobacco Coalition, Tex.App.-Austin, Aug. 15, 2014

KeyCite Yellow Flag - Negative Treatment Proposed Legislation

Vernon's Texas Statutes and Codes Annotated
  Tax Code (Refs & Annos)
    Title 2. State Taxation (Refs & Annos)
      Subtitle B. Enforcement and Collection (Refs & Annos)
        Chapter 112. Taxpayers' Suits (Refs & Annos)
          Subchapter C. Injunctions (Refs & Annos)

V.T.C.A., Tax Code § 112.108

§ 112.108. Other Actions Prohibited

Currentness

Except for a restraining order or injunction issued as provided by this subchapter, a court may not issue a restraining order, injunction, declaratory judgment, writ of mandamus or prohibition, order requiring the payment of taxes or fees into the registry or custody of the court, or other similar legal or equitable relief against the state or a state agency relating to the applicability, assessment, collection, or constitutionality of a tax or fee covered by this subchapter or the amount of the tax or fee due, provided, however, that after filing an oath of inability to pay the tax, penalties, and interest due, a party may be excused from the requirement of prepayment of tax as a prerequisite to appeal if the court, after notice and hearing, finds that such prepayment would constitute an unreasonable restraint on the party's right of access to the courts. The court may grant such relief as may be reasonably required by the circumstances. A grant of declaratory relief against the state or a state agency shall not entitle the winning party to recover attorney fees.

**Credits**
Added by Acts 1989, 71st Leg., ch. 232, § 16, eff. Sept. 1, 1989. Amended by Acts 1995, 74th Leg., ch. 579, § 13, eff. Jan. 1, 1996.

V. T. C. A., Tax Code § 112.108, TX TAX § 112.108
Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.